247 So.2d 296 (1971)
James Joseph RICHARDSON, Appellant,
v.
STATE of Florida, Appellee.
No. 38003.
Supreme Court of Florida.
April 21, 1971.
*297 John Spencer Robinson of Robinson & Whitson, Daytona Beach, for appellant.
Robert L. Shevin, Atty. Gen., and George R. Georgieff, Asst. Atty. Gen., for appellee.
PER CURIAM.
This cause is before us on appeal from the Circuit Court of the Twelfth Judicial Circuit in and for Lee County, to review the lengthy proceedings wherein the appellant, hereinafter referred to as defendant, James Joseph Richardson, was convicted of murdering his stepdaughter, Betty Jean Bryant. The jury did not recommend mercy and a sentence of death was imposed.
The testimony at the trial revealed that the victim, an eleven-year-old child, along with six younger children, three of whom were the natural children of the defendant, were fed massive amounts of parathion poisoning for lunch while their parents were miles away picking fruit. The poison had been placed in almost all of the food which the children might have eaten for lunch. It was never contended that this could have been accidental.
The State adduced the testimony of a series of witnesses as to the toxological and pharmacological analysis of the tissues of the deceased and the contents of the cooking vessel from which the victim took her lunch on the day of her death. These analyses revealed high level concentration of the organic phosphate, parathion, a highly toxic insecticide. The cause of death was thus determined by a postmortem examination as well as the testimony of a number of teachers at the elementary school regarding the victim's symptoms after she returned from lunch that day. Also in evidence was the testimony of the doctors regarding the symptoms of the dying children as they found them in the hospital and commenced treatment.
James Cunningham, a witness for the State, testified that he was a prisoner in the County Jail in Arcadia when the defendant was first incarcerated. He testified that defendant, in a conversation with him, admitted that he had killed his children. Cunningham also testified that he overheard a conversation in the jail between the defendant and another prisoner named Ernell Washington, during which Washington asked him if he did kill his children, whereupon defendant said, "Yes." Cunningham further testified that defendant's wife, who had also been incarcerated but who was being kept on the floor above him, called down to the defendant asking, "Why did you kill my children?" Another state witness, James Weaver, also testified that while an inmate in the Arcadia jail, defendant told him that he had killed his children but did not state why.
Defendant's first point on appeal to this Court is that the State has failed to prove the material elements of its case beyond a reasonable doubt. As indicated by the evidence *298 summarized above, the record refutes defendant's contention in this regard. Indeed, a thorough review of the entire record reveals evidence more than adequate to establish defendant's guilt of murder in the first degree beyond and to the exclusion of a reasonable doubt.
The next point on appeal is the trial court's asserted error in refusal to grant defendant's motion to suppress evidence taken from defendant's house. The specific items of evidence objected to on motion to suppress included two bags of parathion, a plastic bag for parathion, an eight-inch pot lid and a frying pan.
The factual background of the search of defendant's premises in this case is unique in that the search was made for the purpose of identifying the poison substance eaten by the children in an effort to save their lives. On the day of the tragedy, the children came home from school shortly after 11:00 a.m. and consumed the poisoned food. Within minutes all of them began showing symptoms of extreme pain. The school teacher and neighbors rushed the children to a local hospital for treatment. Notice was sent to the parents to come to the hospital. When Sheriff Frank Cline of DeSoto County learned that the children were critically sick and dying as a result of some substance they had apparently consumed at home, the Sheriff rushed to the home to determine what type of chemical the children had consumed. At this time the children were still alive and the purpose of the search was to enable doctors to provide proper treatment. Nothing was removed from the premises at this time by the Sheriff.
The Sheriff then went to the hospital and talked to defendant Richardson. He told defendant he would like to look around the house and Richardson gave him the keys to the refrigerator which he had around his neck and invited him to make a further and complete inspection of the premises. The Sheriff and his assistants then returned to the premises and removed the poisoned food and containers in which it was cooked and eaten from the premises. Defendant claims that the Sheriff should have warned him of his constitutional rights before making the search. However, at the time of this search, there was no reason to suspect that any crime had been committed and certainly no reason to suspect that defendant had poisoned the children.
The Sheriff went back to the home on several occasions after the first visit and on one occasion the defendant was there and helped him search. There was still no apparent reason to suspect foul play. During the first four visits to the premises, articles were taken and given to agricultural and chemical experts, as well as toxocological experts for analysis. These were taken as a result of defendant's voluntary consent that the Sheriff have free rein to look over the premises so that he might find whatever it was that might have caused the death of the children. Thereafter a search warrant was secured and further articles were taken in pursuance thereof, all of which were turned over to experts for detailed examination. The search warrant was secured after it was discovered that on the very night before the tragedy, defendant had contracted to insure the lives of all of the children, each in the amount of $1,000. This fact, coupled with certain other evidence, made the defendant highly suspect, so the search warrant was issued.
The trial court properly denied the motion to suppress in this case. The initial searches of the premises were made for the purpose of aiding doctors to save the children's lives and before defendant became suspect. Furthermore, the initial searches were made with defendant's consent and subsequent searches with a search warrant.
Defendant's Point Three on appeal is that the trial court erred in not having a court reporter present at the preliminary hearing and at the pretrial voir dire examination *299 of the veniremen. Point Four on appeal is related in that it involves the alleged error of the trial court in excusing fifteen jurors for cause for opposing the death penalty, contrary to the rule of the United States Supreme Court laid down in Witherspoon v. Illinois.[1]
Florida Statutes § 43.06, F.S.A., provides that proceedings shall be reported in constitutional courts of Florida if the State or the defense shall move for same or that the Court, in its discretion may require the proceedings reported. The record before us does not reveal that any request was made by the defendant or his attorney to have either the preliminary hearing or the voir dire examination reported. If the defendant had wanted a reporter present, the filing of a written motion would have preserved his objection to the court's ruling. No such motion was filed. A reporter was present at the voir dire examination but simply noted the identification of the jurors and a finding by the court that all jurors had been examined and found qualified to serve under the laws of Florida. The identity of the excluded jurors, the specific questions propounded to them and answers given, are not preserved in the record nor stated by the defendant in any way. In his motion for a new trial, defendant raises many points but does not raise the objection that jurors were excluded because of their views relating to capital punishment contrary to the Witherspoon doctrine.
The record comes to this Court with the presumption that the learned trial judge knew and followed the law. We presume that the trial court was fully aware of the holding in Witherspoon and mindful that for many years prior to the holding in Witherspoon, the standards laid out therein had been followed by the State of Florida.[2] It is our view that a defendant who is unhappy with the results of a criminal proceeding at which he did not request the making of a record should not be permitted a new trial on the ground that no record was made.[3]
Another point on appeal is the alleged error of the trial court in allowing state witnesses Bryant, Oppel, Whidden and Hollingsworth to testify as to their recollection of Ernell Washington's testimony at the preliminary hearing. At the preliminary hearing on March 25, 1968, Ernell Washington testified that he was a prisoner in the DeSoto County Jail at the time defendant was first incarcerated; that he heard defendant confess that he poisoned the children and that he did so to eliminate problems arising with his wife and her former husband, the natural father of one of the victims. After Washington's testimony at the preliminary hearing and before the trial, he was murdered.
No court reporter was present and no official record was made of Ernell Washington's testimony at the preliminary hearing. However, the defendant was present and represented by counsel at the time Washington testified. Furthermore, defendant's attorney cross-examined Washington at that time.
The trial court permitted Thelma Ted Bryant, reporter for the Fort Myers News Press and Tampa Tribune; Richard Oppel, a reporter for the Associated Press; Worley Whidden, an Arcadia real estate broker; T.R. Hollingsworth, a salesman; and John Treadwell, an assistant state's attorney, to testify concerning the statements which Ernell Washington made at the preliminary hearing. The witness Oppel during his testimony referred to his written notes made at the time of the preliminary hearing. The witnesses were not permitted to give conclusions as to what they understood the testimony to mean but were confined *300 to simply reciting the statements made by Ernell Washington.
Defendant contends that the testimony of these witnesses is hearsay and should not have been permitted. In support of this contention he cites Alvarez v. State.[4] In that case, Alvarez and Murrell were tried as codefendants and neither of them testified. A third person was permitted to take the stand on behalf of the State and testify as to statements made by Murrell implicating Alvarez in the crime for which they were both on trial. Both Murrell and Alvarez were alive and present as codefendants during the trial. This Court's reversal of the conviction is in accord with the decision of the United States Supreme Court decided some fifty years later in Bruton v. United States,[5] but is not pertinent here.
A time-honored and universally recognized exception to the hearsay rule is the so-called "former testimony" exceptions.[6] Under this rule, evidence of third parties as to the testimony of a deceased witness given under oath in a preliminary hearing or other judicial proceeding where the defendant was represented by counsel, had opportunity to confront and cross-examine the witness, is admissible in a subsequent trial.
Wigmore treats "former testimony" as being outside the hearsay rule because the requirements of the rule are complied with:[7]
"When, therefore, a statement has already been subjected to cross-examination and is hence admitted  as in the case of a deposition or testimony at a former trial,  it comes in because the rule is satisfied,  not because an exception to the rule is allowed. The statement may have been made before the present trial, but if it has been already subjected to proper cross-examination, it has satisfied the rule and needs no exception in its favor. This is worth clear appreciation, because it involves the whole theory of the rule."
Specifically, regarding testimony before a committing magistrate or a justice of the peace, Wigmore states:[8]
"If there was under the procedure of that official an opportunity of cross-examination, the testimony is admissible; otherwise, not. There never has been any doubt on this point since the establishment of the general doctrine (ante § 1364) in R. v. Paine, in 1696 * * *."
The methods of proof of former testimony are set out by McCormick in his work on evidence.[9] One of the recognized methods of proof is by testimony of any first-hand observer of the giving of the former testimony. This observer may testify to the purport of the former testimony from his unaided memory or may use written notes or memoranda of the testimony made at the time the former testimony was given to refresh his memory or as a past recollection recorded.
This Court has followed the majority allowing in evidence the former testimony given by a deceased or otherwise unavailable witness. In Blackwell v. State,[10] a capital case, the testimony of two witnesses at a former trial was admitted on a showing by the state, that both witnesses were *301 too sick to attend court. The Blackwell decision, citing many authorities, holds:[11]
"It has long been a settled rule of evidence, as one of the exceptions to the general rule excluding hearsay, that the testimony of a witness given in a former action, or at a former stage of the same action, is competent in a subsequent action, or in a subsequent proceeding of the same action, where it is shown that such witness is dead, has become insane or disqualified, is beyond the jurisdiction of the court (that is, out of the state), cannot conveniently be found, or has been kept away by the opposite party, where it is also shown that the former giving of such testimony was under oath, and that opposing party cross-examined, or was afforded an opportunity to cross-examine, such witness. This rule has been generally applied in criminal causes, and has been held not to be in conflict with article 6 of the United States constitutional amendments, providing that `in all criminal prosecutions the accused shall enjoy the right to be confronted with witnesses against him,' nor in conflict with the state Constitution, such as ours (article 6, § 7), which provides that `in all criminal prosecutions the accused shall have the right to meet the witnesses against him face to face;' it being held that, where the defendant has once, at some proper stage of the proceeding, been confronted with and met such witness face to face, has cross-examined him, or been given the privilege to do so, the provisions of these Constitutions have been satisfied, and that such evidence is not objectionable on that account."
We have carefully reviewed the provisions of the 1968 Constitution, Article 1, § 16, F.S.A., and find that the confrontation requirement is still met where there is opportunity to cross-examine the witness under oath as in this case.
In the instant case, the former testimony was introduced into evidence on behalf of the prosecution. It is important to remember that a defendant may also need to use former testimony of a deceased or otherwise unavailable witness.
In Putnal v. State,[12] a liquor law violation case, testimony of a witness in a former trial in a municipal court, as testified to by a person who was present, was allowed in evidence on showing that the witness was unavailable. In Putnal, this Court stated:[13]
"The rule seems to be well settled that `facts may be established by evidence thereof given on a former trial, provided the court is satisfied: (1) That the party against whom the evidence is offered, or his privy, was a party on the former trial; (2) that the issue is substantially the same in the two cases; (3) that the witness who proposes to testify to the former evidence is able to state it with satisfactory correctness; and (4) that a sufficient reason is shown why the original witness is not produced. * * * The great weight of authority is to the effect that the admission of such testimony, when a proper predicate has been laid therefor, is not violative either of the hearsay rule or the constitutional provision of confrontation."
In Dorman v. State,[14] a manslaughter case, the trial court refused to allow defendants to use the deposition of an absent witness taken at preliminary hearing on the ground that sufficient diligence had not been shown to procure the attendance of the witness. To like effect is Davis v. State,[15] a breaking and entering case, where this Court held it reversible error to allow into evidence the transcript of testimony of seven complaining witnesses on a showing by the State that a deputy sheriff had "Made one attempt to serve the subpoena but the places where the witnesses *302 had resided had closed for the summer and he was told that they had gone North."
There are statements in the Davis case to the effect that former testimony given at a preliminary hearing is not entitled to be received on an equal basis with testimony given at a former trial because of the nature of the preliminary hearing. We have found no authorities recognizing such a distinction. Whether the former testimony was given at a preliminary hearing or at a former trial, is immaterial so long as there was full and adequate opportunity to confront and cross-examine the witness.[16]
In times past some preliminary hearings have been held in an informal manner without counsel present or warnings of constitutional rights being given. However, in the seventeen years since the Davis decision, the preliminary hearing has come to be recognized as an important step in the accusatory process. Under Florida law the accused has a right to a preliminary hearing.[17] The Florida Statutes and Rules of Criminal Procedure require that a person arrested, either with or without a warrant, "shall without unnecessary delay" be taken before a magistrate.[18] Rule 1.122(a), Florida Rules of Criminal Procedure, 33 F.S.A. provides:
"(a) Duty of Magistrate. When the defendant is brought before the magistrate upon an arrest, either with or without a warrant, on a complaint of having committed an offense, the magistrate shall immediately inform him:
(1) of the charge against him;
(2) of the purpose of a preliminary hearing;
(3) of his right to the aid of counsel during the preliminary hearing;
(4) of his right to have or to waive such hearing;
(5) of his right not to testify, and also caution him that in the event he does testify, anything that he says may be used against him in a subsequent hearing or proceeding."
The preliminary hearing has been held "not a step in due process of law"[19] or a "necessary step in the criminal proceedings."[20] These statements do not alter the fact that a preliminary hearing is required by law and, when held, can be of critical importance to the State and the accused, as is apparent from the facts of the instant case.
The United States Supreme Court in its recent decision in Coleman v. State of Alabama[21] holds preliminary hearings in Alabama a critical stage in the State's criminal process requiring counsel and as a basis for this holding states:[22]
"Plainly the guiding hand of counsel at the preliminary hearing is essential to protect the indigent accused against an erroneous or improper prosecution. First, the lawyer's skilled examination and cross-examination of witnesses may expose fatal weaknesses in the State's case, that may lead the magistrate to refuse to bind the accused over. Second, in any event, the skilled interrogation of witnesses by an experienced lawyer can fashion a vital impeachment tool for use in cross-examination of the State's witnesses at the trial, or preserve testimony favorable to the accused of a witness who does not appear at the trial. Third, *303 trained counsel can more effectively discover the case the State has against his client and make possible the preparation of a proper defense to meet that case at the trial. Fourth, counsel can also be influential at the preliminary hearing in making effective arguments for the accused on such matters as the necessity for an early psychiatric examination or bail." (Emphasis supplied.)
The four considerations set out in the Coleman case, supra, are also considerations under the laws of Florida and the facts of the instant case meet the requirements of Coleman. We are not called upon to decide the effect, if any, of the Coleman holding on the law of Florida regarding the nature of, and right to counsel at, preliminary hearings.[23]Coleman is cited as an indicator of the importance of preliminary hearings today supporting our view that former testimony taken under appropriate safeguards at a preliminary hearing is entitled to be received on an equal basis with testimony taken at a former trial. No reason exists for distinguishing a preliminary hearing from a previous trial in the application of the "former testimony" exception to the hearsay rule.
Former testimony of a deceased or otherwise unavailable witness given at a preliminary hearing must, of course, meet all the standard evidentiary requirements, materiality, relevancy, etc., when offered into evidence at the trial.
In the instant case, a further safeguard exists in the use of the former testimony in that it is merely supportive of testimony given in person at the trial by the witnesses, James Cunningham and James Weaver, who were also inmates in the Arcadia jail at the time of defendant's incarceration there. Cunningham testified to the conversation between the defendant and Washington. Weaver testified at the trial that the defendant told him that he, the defendant, killed his children.
Point Ten on appeal to this Court is the asserted error of the trial court in allowing the prosecutor, allegedly, to make reference in closing argument to a bag of parathion in defendant's refrigerator in his home. Defendant's objection to this statement is that it is not supported by the facts in evidence.
Defendant has not furnished this Court with any record of the alleged remarks by the State Attorney or the alleged objection made to the remarks. Despite the lack of a record of the alleged statement, we have, nonetheless, searched the record to determine whether there is evidence which would support the statement allegedly made by the State Attorney. We note that in the deposition of Judge Gordon Hayes, on page 613 of the record, there is the following testimony regarding a conversation with Mrs. Annie Mae Richardson, defendant's wife, at the hospital at a time when Hayes, in his capacity of Coroner, was attempting to determine the source of the poison eaten by the children:
"Q What did Annie May say? Did she have any idea what type of poison?
"A Annie Mae said there wasn't any  maybe that there was some rat poison.
"Q Did she name the type of rat poison?
"A No, she didn't. She told me where it was. It was locked up in the refrigerator." (Emphasis supplied.)
This testimony is sufficient to support the statement allegedly made by the State Attorney to the jury.
Other points raised by defendant have been carefully reviewed but do not warrant reversal. We have also scrutinized the record of the proceedings below in accordance *304 with F.S. § 924.32(2), F.S.A. and have determined that the interests of justice do not require a new trial.
Accordingly, the judgment below is affirmed.
It is so ordered.
ROBERTS, C.J., and ERVIN, CARLTON, ADKINS, BOYD and DREW (Retired) JJ., concur.
NOTES
[1] 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).
[2] Campbell v. State, 227 So.2d 873 (Fla. 1969).
[3] Williamson v. United States, 224 A.2d 309 (D.C.App. 1966); House v. United States, 234 A.2d 805 (D.C.App. 1967).
[4] 75 Fla. 286, 78 So. 272 (1918).
[5] 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).
[6] 15 A.L.R. 495, Annot: Use in Criminal Case of Testimony Given on Former Trial, or Preliminary Examination by Witness Not Available At Present Trial (1921), Supplemented in 79 A.L.R. 1392 (1932), 122 A.L.R. 425 (1939), 159 A.L.R. 1240 (1945).
[7] 5 Wigmore, Evidence 50 (3rd Ed. 1940).
[8] 5 Wigmore, Evidence 56 (3rd Ed. 1940).
[9] McCormick, Evidence § 237 (1954).
[10] 79 Fla. 709, 86 So. 224 (1920).
[11] Id. at 728, 86 So. at 230.
[12] 56 Fla. 86, 47 So. 864 (1908).
[13] Id. at 93, 47 So. at 866.
[14] 48 Fla. 18, 37 So. 561 (1904).
[15] 65 So.2d 307 (Fla. 1953).
[16] 5 Wigmore, Evidence 56 (3rd Ed. 1940).
[17] Fla. Stat. §§ 901.03, 901.06, 901.07, 901.08, F.S.A. (1969); Fla.R.Crim.P. 1.121, 1.122.
[18] Fla. Stat. §§ 901.06, 901.23, F.S.A. (1969).
[19] Sangaree v. Hamlin, 235 So.2d 729, 730 (Fla. 1970); Baugus v. State, 141 So.2d 264, 267 (Fla. 1962), cert. den. 371 U.S. 879 (1962), 83 S.Ct. 153, 9 L.Ed.2d 117.
[20] Palmieri v. State, 198 So.2d 633, 635 (Fla. 1967).
[21] 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1969).
[22] Id. at 9, 90 S.Ct. at 2003.
[23] See Harrison v. Wainwright, 243 So.2d 427 (Fla.App. 1st 1971), concluding that Coleman is not applicable in Florida because of differences between preliminary hearings in Florida and Alabama.