Eric Duane Turner, a prisoner under two sentences of death, appeals his two convictions of first-degree murder and the sentences imposed. He also appeals his sentences and convictions for two counts of kidnapping and one count of armed robbery. We have jurisdiction based on article V, section 3(b)(1) of the Florida Constitution.
We affirm Turner's murder convictions. We reverse the death sentences and remand for the imposition of life sentences without possibility of parole for twenty-five years because the trial judge erred when he overrode the jury's life recommendations. We affirm Turner's convictions and sentences for the noncapital offenses.
Turner was convicted of kidnapping Lola Mae Toombs and Teresa Clements from a Panama City consignment store, killing them, and leaving their bodies in a clay pit north of town. The jury found Turner guilty of two counts of first-degree murder, two counts of kidnapping, and one count of armed robbery. Jurors recommended life sentences for the first-degree murder convictions.
The trial judge overrode the jury's life recommendations and sentenced Turner to death for both murders. In imposing the death penalty, the trial judge found these aggravating factors: (1) the murders were committed while Turner was committing or attempting to commit robbery or kidnapping or flight after committing any robbery or kidnapping; (2) the murder was committed to avoid arrest or to prevent a lawful arrest (Clements only); (3) the murders were committed for pecuniary gain; (4) the murders were heinous, atrocious, or cruel; and (5) the murders were committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. § 921.141(5)(d), (e), (f), (h), (i), Fla. Stat. (1989). The sentencing order is not clear about which aggravating factors apply to which victim, but the State contends that all five aggravators apply to Clements' murder and two apply to Toombs. Turner says in his brief that he accepts this characterization.
The trial judge found one statutory mitigating factor: Turner has no significant history of prior criminal activity. §921.141(6)(a), Fla. Stat. (1989). He found no nonstatutory mitigating factors.
The trial judge sentenced Turner to twenty-seven year prison terms for each noncapital offense. The judge ordered these twenty-seven year terms served concurrently, but consecutively to the death penalty.
These murders occurred after Turner planned a robbery at the consignment store. He watched the store and approached Toombs, the store's owner, as she left work on November 29, 1989. Toombs was carrying a bank bag that included receipts from the business. When Turner confronted her, Toombs screamed and Clements, an employee, came to help. Turner forced both women into Toombs' van, and the trio drove away.
While in the van, Toombs offered Turner $300, which he accepted. Nonetheless, Turner fired a gun he was holding and hit the ceiling. He fired a second shot that hit Toombs in the head and killed her. After Turner shot Toombs, he took the bank bag, which contained another $1100 and jewelry. He kept the money, but threw away the jewelry. Before he shot Toombs, he forced Clements to take off her clothes in an apparent attempt to buy time for his escape. *Page 446 
After shooting Toombs, Turner stopped the van by clay pits north of Panama City. He took Clements outside, made her lie down, and shot her in the back of the head. Turner left both bodies in the clay pit.
An employee of the second-hand store discovered Clements and Toombs missing the next day. Authorities found the bodies on December 1, 1989. Toombs was fully clothed, while Clements was naked. Toombs' van was found later that day in Dothan, Alabama. Physical evidence from the clay pit and the van included latent prints that matched Turner's, blood in the van, and a spent cartridge at the clay pit.
Police in College Park, Georgia, arrested Turner at a motel on December 13, 1989, after the manager reported that a suspicious person was staying there. The manager had notified police when he learned that Panama City authorities wanted to question Turner. When officers went to Turner's room to investigate, Turner put a gun to his head and threatened to kill himself. An officer eventually disarmed Turner, confiscated a 45-caliber pistol, and arrested him. There were no warrants at the time for Turner's arrest, but he was a suspect in the deaths of Toombs and Clements.
Turner did not testify at his trial, but gave statements to police that he planned to rob Toombs and that he did not initially intend to kill the women.
Turner raises ten issues on this direct appeal.[1]
 I. GUILT PHASE
On reviewing the record, we find no error with the guilt-phase issues that Turner raises.[2]
Turner was initially found incompetent to stand trial, but the trial judge later found him competent. Although there was conflicting evidence during the pretrial competency proceedings, the trial judge did not abuse his discretion in finding Turner competent to stand trial. See, e.g., Watts v. State, 593 So.2d 198, 202 (Fla.) (trial court has responsibility to resolve disputed factual issues on competency, which will be upheld absent abuse of discretion), cert. denied, ___ U.S. ___, 112 S.Ct. 3006, 120 L.Ed.2d 881 (1992).
Turner next argues that the trial judge committed three errors during jury selection. First, he claims the judge erred when he granted the State's challenge for cause of prospective juror Lillian Roche. After the court granted the challenge, defense counsel said, "For the record, I don't believe [Roche] indicated that she had a fixed opinion as to whether she could give [the death penalty] or not." This is not an objection to the State's challenge or the court's granting it, so this claim is not preserved for our review. See, e.g., Maxwell v. State, 443 So.2d 967, 970 (Fla. 1983) (argument that trial court erred in excusing a juror for cause not preserved without timely objection). Even if we reached the merits of this claim, we would find that the trial court properly excused Roche.
Second, Turner argues that the trial judge erred in granting a peremptory challenge of prospective juror Lanshana Booker, who is African-American, because the State did not give racially neutral reasons. See State v. Slappy, 522 So.2d 18 (Fla.), cert.denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988);State v. Neil, 457 So.2d 481 (Fla. 1984). We disagree. The record supports the racially neutral reasons the State gave for excusing Booker: Booker's problems with the definitions of murder, discussions *Page 447 
with a co-worker about the case, and status as a crime victim. The trial judge must evaluate the credibility of both the person giving the explanation and the explanation. Green v. State,583 So.2d 647, 651 (Fla. 1991), cert. denied, 502 U.S. 1102, 112 S.Ct. 1191, 117 L.Ed.2d 432 (1992). We find no abuse of discretion in granting this peremptory challenge.
Third, Turner argues that six jurors and one alternate should have been excused because they had read or heard about the case. Again, we disagree. The test for juror competency is "whether the juror can lay aside any bias or prejudice and render his [or her] verdict solely upon the evidence presented and the instructions on the law given to him [or her] by the court." Lusk v. State,446 So.2d 1038, 1041 (Fla.), cert. denied, 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984). The juror should be excused if there is any reasonable doubt about the juror's ability to render an impartial verdict. Hill v. State, 477 So.2d 553, 555 (Fla. 1985). The record reflects that not only had these jurors not formed any opinion about Turner's case, but some could not even recall what they had read or heard. The jurors indicated they could base their verdicts solely on the evidence and the court's instructions. Thus, there was no error in allowing these jurors to serve.
Turner's final guilt-phase issue concerns his motion to suppress. Panama City authorities notified Georgia officials that Turner was wanted for questioning. Turner claims he was detained illegally when he was arrested in a Georgia motel room because there were no arrest or search warrants. Thus, Turner argues, the trial court erred in denying his motion to suppress physical evidence seized in the motel room and his subsequent confession.
Under the circumstances of this case, we find that the entry into Turner's motel room was proper. We also find no error in the trial court's admitting physical evidence seized from the motel room and in admitting Turner's confession.
A motel room is considered a private dwelling if the occupant is there legally, has paid or arranged to pay, and has not been asked to leave. Wassmer v. State, 565 So.2d 856, 857 (Fla. 2d DCA 1990). Thus, constitutional rights and privileges that apply to occupants of private permanent dwellings also apply to motel guests. Id. That said, we find nothing improper with the uniformed Georgia officers knocking on the door and announcing themselves. Menendez v. State, 368 So.2d 1278, 1279 (Fla. 1979). The officers knew Turner was wanted for questioning in Florida. Turner voluntarily opened the door and identified himself. Although Turner did not invite the officers into the room, he walked into the room and left the door ajar. This allowed the officers to enter the room because there was no deception or evidence of forced entry. See Byrd v. State, 481 So.2d 468, 472 (Fla. 1985) ("[A]n entry under those circumstances is consensual, at least with respect to the area immediately surrounding the threshold or vestibule entrance of the residence, particularly where the defendant makes no objection."), cert.denied, 476 U.S. 1153, 106 S.Ct. 2261, 90 L.Ed.2d 705 (1986). Because the entry was consensual, the restrictions of Payton v.New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), which prohibits nonconsensual warrantless entry into a home to make a routine felony arrest, do not apply.
While we find that the officers' entry into the motel room was consensual, we also note that after Turner left the door ajar, he walked from the door to a bed, pulled a gun, and pointed it at his head. An officer testified that he was afraid Turner would kill himself. At this point, officers entered the motel room. Police officers can make warrantless entries if they reasonably believe a person inside has immediate need. Zeigler v. State,402 So.2d 365, 371 (Fla. 1981) (citing Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978)), cert. denied,455 U.S. 1035, 102 S.Ct. 1739, 72 L.Ed.2d 153 (1982). This was such an emergency, so the officers did not err in entering Turner's motel room. And, once legally inside the room, police could seize evidence in plain view. Zeigler, 402 So.2d at 371-72.
We find, then, that Turner was not illegally detained. His subsequent confessions to *Page 448 
Florida authorities, which were given after the appropriateMiranda[3] warnings, should not have been suppressed.
Finding no error in any of Turner's guilt-phase issues, we affirm all five convictions.
 II. PENALTY PHASE
Turner's first — and dispositive — penalty-phase issue is whether the trial court erred in overriding the jury's two life recommendations. We have held that:
 A jury recommendation under our trifurcated death penalty statute should be given great weight. In order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ.
Tedder v. State, 322 So.2d 908, 910 (Fla. 1975).
An override is improper where there is a reasonable basis for the jury's recommendation. See, e.g., Bedford v. State, 589 So.2d 245, 253 (Fla. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1773, 118 L.Ed.2d 432 (1992). We agree with Turner that there was a reasonable basis for the jury's life recommendations. We vacate his death sentences and remand for the imposition of life sentences without possibility of parole for twenty-five years.
There is ample mitigation on which the jury could have relied in making its life recommendation, including: the State and the defense stipulated at trial that Turner had no prior criminal record; Turner overcame obstacles during a difficult childhood to graduate from high school, obtain a basketball scholarship, and once showed a lot of promise; there was unrebutted testimony from Turner's mental-health expert that Turner became mentally ill when he was twenty-four and was suffering from paranoid schizophrenia at the time of the killings; and the alternative to the death penalty was two life sentences, which the jury knew would have required Turner to serve a minimum of fifty years in prison before he could be considered for parole.[4]
Our resolution of the jury override issue renders moot the remaining penalty-phase issues.
 III. CONCLUSION
Accordingly, we affirm all of Turner's convictions, as well as his sentences in the noncapital cases. Because the jury override was improper, we vacate Turner's death sentences and remand to the trial court for the imposition of life sentences without possibility of parole for twenty-five years.
It is so ordered.
GRIMES, C.J., OVERTON, KOGAN and HARDING, JJ., and McDONALD, Senior Justice, concur.
SHAW, J., concurs in result only with conviction, and concurs with sentence.
[1] Whether (1) the jury override was improper; (2) Turner was competent to stand trial; (3) the trial court committed jury selection errors; (4) the trial court erred in finding the cold, calculated, and premeditated aggravating circumstance; (5) the State's evidence supported the heinous, atrocious, or cruel aggravating circumstance; (6) the capital felony was committed to avoid or prevent a lawful arrest; (7) the trial court should have given the defense's requested instruction on the cold, calculated, and premeditated aggravating factor; (8) the trial court should have found that Turner established mental mitigating statutory factors; (9) the trial court erred in denying Turner's motion to suppress physical evidence and his confession; and (10) the trial court erred in refusing to give the jury instructions on the heinous, atrocious, or cruel aggravating factor.
[2] Issues (2), (3), and (9).
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[4] We note that the State advised the trial court in a sentencing memorandum that "there is one statutory reason and several nonstatutory reasons upon which the jury could have based its recommendation. Jury override in this case cannot survive." In its appeal to this Court, the State acknowledges the prosecutor's memorandum, but argues that the mitigating evidence does not present a reasonable basis for a life sentence.