ROTHENBERG, J.
The defendant, Dominique Cartwright, was convicted of use or possession of drug paraphernalia, possession of cannabis, possession of cocaine, and possession of a firearm by a convicted felon, based upon a plea of guilty to the charges following an adverse ruling on his motion to suppress the evidence (cocaine, drug paraphernalia, firearms, and marijuana) seized from his apartment absent a warrant.[1] As we conclude that the trial court did not err in denying the defendant’s motion to suppress, we affirm his convictions and sentences.
Prior to discussing the evidence presented at the suppression hearing, we note that the defendant’s motion asserted, in part, that he rented a room on a weekly basis from Sergio Garcia, the owner of the *73 building; that Mr. Garcia operated a car stereo business on the lower portion of the building and rented the apartments located on the upper portion of the building; and that “Garcia allegedly invited the officers to inspect the premises.”
Detective Mead, an experienced narcotics officer, testified that he went to the building owned by Mr. Garcia to investigate a tip about a prostitution house that was being conducted out of an unspecified apartment located on the second floor of the building owned by Mr. Garcia. When the police questioned Mr. Garcia about the alleged prostitution house, Mr. Garcia told him that he did not know anything about it, but gave the officers permission to go upstairs to look around. When the police entered the interior hallway, the defendant opened the door to his apartment, asking Detective Mead, “What’s up?” As Detective Mead was in the hallway speaking to the defendant, he observed a small refrigerator that was in the apartment. The refrigerator, which was approximately four feet away from Detective Mead, had items on top of it which Detective Mead recognized as being cocaine and nickel bags of rock cocaine. From where Detective Mead was standing, he could not see the entire apartment, including the inside of the bathroom. Detective Mead asked the defendant to step outside because he was concerned for his safety and feared that the cocaine would be destroyed if someone else was in the apartment. Detective Mead entered the apartment while other officers stayed outside in the hallway with the defendant, who was handcuffed and wearing only a shirt and boxer shorts. While in the apartment, Detective Mead seized the cocaine, and he observed in plain view several tin containers and a scale, which appeared to have cocaine residue on them, and firearms. Detective Mead exited the apartment and asked the defendant if there were any more drugs inside. The defendant told Detective Mead that there were no other drugs in the apartment, and then asked Detective Mead to retrieve a pair of pants and a pair of shoes for him. Officer Mead retrieved the pants and shoes from the defendant’s apartment as requested. As the defendant was attempting to put his clothes on, he told Detective Mead that he was having trouble with one of the shoes because it had marijuana in it.
The defendant testified at the suppression hearing that he did not give Detective Mead permission to initially enter the apartment, but did give him permission to enter his apartment to retrieve his pants and shoes.
The trial court denied the motion to suppress, making the following oral findings: Mr. Garcia, the owner of the building, gave Detective Mead permission to enter the upstairs hallway; the defendant voluntarily opened the door to his apartment; the cocaine was in plain view;[2] it was apparent to Detective Mead that the items were crack cocaine; Detective Mead had probable cause to arrest the defendant *74 upon seeing the cocaine; there was a heightened concern for safety because narcotics were involved; there were exigent circumstances because someone else could have been in the apartment; when Detective Mead looked into the bathroom, he did so for his own safety; and the firearms were in plain view in the bathroom.
A trial court’s ruling on a motion to suppress represents a mixed question of law and fact. Butler v. State, 706 So.2d 100 (Fla. 1st DCA 1998). A trial court’s factual findings must be sustained if they are supported by substantial, competent evidence. However, a trial court’s legal rulings are subject to de novo review. See Murphy v. State, 898 So.2d 1031, 1033 (Fla. 5th DCA 2005)(“A ruling on a motion to suppress comes to the appellate court as presumptively correct as to disputed facts and all reasonable inferences and deductions drawn from them. However, the trial court’s application of the law to the facts is reviewed under the de novo standard.”) (citations omitted); Williams v. State, 769 So.2d 404, 406 (Fla. 2d DCA 2000)(holding that an appellate court “will not reverse a trial court’s findings of fact where the findings are supported by competent, substantial evidence,” however, the trial court’s application of the law to those findings of fact is subject to de novo review).
In this appeal, the defendant claims that there was insufficient evidence presented at the suppression hearing to support the trial court’s finding that Mr. Garcia had the authority to grant Detective Mead permission to enter the second floor hallway. We disagree.
In the motion to suppress filed by the defendant, he concedes that Mr. Garcia was the owner of the entire building, including the apartments located on the second floor. As the defendant conceded Mr. Garcia’s ownership of the building, the State did not have to prove Mr. Garcia’s authority to grant permission to law enforcement to enter the common areas of the second floor.
The defendant also challenges the trial court’s finding of fact that it was immediately apparent to Detective Mead that the items on the refrigerator were crack cocaine. Detective Mead testified that he has been a police officer for approximately seventeen years, and that since 1997, he has been exposed to crack cocaine almost daily and that he has identified crack cocaine hundreds of times. Moreover, Detective Mead testified that based on his experience, years of training, almost daily exposure to crack cocaine, and the short distance between him and the refrigerator (only four feet), he immediately recognized that the items on the top of the refrigerator were nickel bags of crack cocaine. As the trial court’s finding was clearly supported by substantial, competent evidence, we must sustain the trial court’s finding of fact that it was immediately apparent to Detective Mead that the items on the top of the refrigerator were crack cocaine.
While the officer observed cocaine on the refrigerator in open view, “there must be a Fourth Amendment exception, such as exigent circumstances, to justify the warrantless entry and seizure.” Murphy, 898 So.2d at 1034. As we conclude that the record supports the trial court’s conclusion that exigent circumstances existed, we find no fault with the trial court’s finding that the warrantless entry and seizure of the cocaine was lawful.
Once Detective Mead was legally in the defendant’s apartment, based on the exigent circumstances, he properly seized the drug paraphernalia, marijuana, and firearms that were in plain view. See Turner v. State, 645 So.2d 444, 447 (Fla.1994)(hold *75 ing that once a police officer is legally inside defendant’s private dwelling, he could seize evidence in plain view).
As we conclude that the trial court prop- ■ erly denied the defendant’s motion to suppress, we affirm his convictions and sentences.
Affirmed.

. After the trial court denied the defendant’s motion to suppress the evidence, the defendant pled guilty to the charges while expressly reserving his right to appeal that ruling.

. The cocaine was in "open view,” not "plain view” because Detective Mead was outside of a constitutionally protected area, the hallway, and was looking inside of a constitutionally protected area, the defendant's apartment, when he observed the contraband. Murphy v. State, 898 So.2d 1031, 1033-34 (Fla. 5th DCA 2005)("In the plain-view situation, the officer has a constitutional right to be in the place where the seizure is made. In an open-view situation, the officer sees the contraband from a place he or she has a right to be, outside a constitutionally protected area, but may not have constitutional access to the place the contraband is located when seized. In such cases, there must be a Fourth Amendment exception, such as exigent circumstances, to justify the warrantless entry and seizure.”)(footnote omitted).