ORFINGER, J.,
dissenting.
“The Fourth Amendment to the United States Constitution has drawn a firm line at the entrance to the home, and thus, the police need both probable cause to either arrest or search and exigent circumstances to justify a nonconsensual warrantless intrusion into private premises.” Kirk v. Louisiana, 586 U.S. 635, 637, 122 S.Ct. 2458, 153 L.Ed.2d 599 (2002). That line is far less firm now that the majority has created a “tardy parent” exception to the Fourth Amendment. This new exception to the Constitution’s prohibition against governmental intrusions into protected places seemingly would apply anytime a parent is late picking up a child from school, daycare or a babysitter and cannot be reached by telephone, and would permit the police to search the parent’s home to determine if the parent is home and might need medical attention. The majority’s view significantly diminishes the “overriding respect for the sanctity of the home that has been embedded in our traditions since the origins of the Republic.” Payton v. New York, 445 U.S. 573, 601, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Consequently, I must respectfully dissent.
“[T]he right of a man to retreat into his own home and there be free from unreasonable governmental intrusion” stands “[a]t the very core” of the Fourth Amendment. Kyllo v. United States, 533 U.S. 27, 31, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001). A warrantless search of a home is presumptively unreasonable, and thus, unconstitutional under the Fourth Amendment. Coolidge, 403 U.S. at 454-55, 91 S.Ct. 2022. However here, because the police were not investigating a crime or searching for evidence when they entered Ortiz’s home, one might reasonably ask if the Fourth Amendment is implicated at all. Under the Fourth Amendment, a person enjoys the highest reasonable expectation of privacy in his or her private home. See, e.g., Payton, 445 U.S. at 585, 100 S.Ct. 1371. A “search occurs when an expectation of privacy that society is prepared to consider reasonable is infringed.” United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). Consequently, I believe that although Deputy Mercado was not investigating a crime, his entry into the Ortiz home is properly analyzed using Fourth Amendment principles. “With few exceptions, the question whether a warrantless search of a home is reasonable and hence constitutional must be answered no.” Kyllo, 533 U.S. at 31, 121 S.Ct. 2038; see Illinois v. Rodriguez, 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). One of the recognized exceptions to the warrant requirement exists when law enforcement is confronted with exigent circumstances or some other emergency situation. The terms exigent circumstances, community caretaking and the emergency aid doctrine, all recognized exceptions to the warrant requirement of the Fourth Amendment, are closely related, and courts do not always clearly distinguish between them. See Matthew Bell, Fourth Amendment Reasonableness: Why Utah Courts Should Embrace the Community Caretaking Exception to the Warrant Requirement, 10 Boalt J.Crim. L. 3, 5 (Dec. 2005). As Payton makes clear, as a general rule, the police need either a warrant or probable cause and exigent circumstances in order to make a lawful entry into a home. See also Kirk, 536 U.S. at 638, 122 S.Ct. 2458. Probable cause to search exists when there is a “fair probability that contraband or evidence of a crime will be found.” Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d *611 527 (1983). However, an exigent circumstances analysis is appropriate only when the police act in a criminal investigative capacity. People v. Ray, 21 Cal.4th 464, 88 Cal.Rptr.2d 1, 981 P.2d 928, 936-37 (1999). In other emergency situations, the police must have an objectively reasonable belief that someone or something, such as a fire, requires immediate attention inside the premises to be entered. To overcome the presumption of unconstitutionality, the government must demonstrate that a grave emergency makes a warrantless entry imperative for the safety of the police or the community. McDonald v. United States, 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153 (1948); see also Rodriguez, 497 U.S. at 191-92, 110 S.Ct. 2793 (Marshall, J., dissenting).
In Riggs, the Florida Supreme Court explained the warrant requirement and the emergency aid exception, observing:
The United States Supreme Court has repeatedly identified “physical entry of the home [as] the chief evil against which the wording of the Fourth Amendment is directed.” Payton v. New York, 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (quoting United States v. United States District Court, 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972)). Throughout the Supreme Court’s caselaw, “the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.” Id. at 590, 100 S.Ct. 1371. As the preceding sentence suggests, however, a well-established exception exists for “the sort of emergency or dangerous situation, described in our cases as ‘exigent circumstances,’ that would justify a warrantless entry into a home for the purpose of either arrest or search.” Id. at 583, 100 S.Ct. 1371.
When the government invokes this exception to support the warrantless entry of a home, it must rebut the presumption that such entries are unreasonable. See Welsh v. Wisconsin, 466 U.S. 740, 750, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984). To do so, it must demonstrate a “grave emergency” that “makes a war-rantless search imperative to the safety of the police and of the community.” Illinois v. Rodriguez, 497 U.S. 177, 191, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). An entry is considered “imperative” when the government can show a “compelling need for official action and no time to secure a warrant.” Michigan v. Tyler, 436 U.S. 499, 509, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978). As is often the case under the Fourth Amendment, “[t]he reasonableness of an entry by the police upon private property is measured by the totality of existing circumstances.” Zeigler v. State, 402 So.2d 365, 371 (Fla.1981).
The circumstances in which the Supreme Court has applied the exigent circumstances exception are “few in number and carefully delineated.” U.S. District Court, 407 U.S. at 318, 92 S.Ct. 2125. They include pursuing a fleeing felon, Warden v. Hayden, 387 U.S. 294, 298-99, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), preventing the destruction of evidence, Schmerber v. California, 384 U.S. 757, 770-71, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), searching incident to a lawful arrest, Chimel v. California, 395 U.S. 752, 762-63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), and fighting fires, Tyler, 436 U.S. at 509, 98 S.Ct. 1942. Outside of those established categories, the Supreme Court “has often heard, and steadfastly rejected, the invitation to carve out further exceptions to the warrant requirement for searches of the home.” Rodriguez, 497 U.S. at 192, 110 S.Ct. 2793.
*612 [[Image here]]
... In other words, where safety is threatened and time is of the essence, we have recognized that “the need to protect life and to prevent serious bodily injury provides justification for an otherwise invalid entry.” Arango v. State, 411 So.2d 172, 174 (Fla.1982).
918 So.2d at 278-79.
The facts of Riggs are instructive. A four-year-old child was found wandering naked and alone in the early morning hours in an apartment complex parking lot. The child was disoriented and had no idea from where she came. One apartment door was slightly ajar as though “somebody had come out of there.” 918 So.2d at 276. The police entered the apartment because they were “concerned about the welfare of the parents [and] obviously we’re also concerned about any type of child abandonment or anything like that.” Id. Once inside, they continued calling out, again without response. On a coffee table in the living room, they noticed a plastic cigar tube containing some seeds (later determined to be marijuana). They then entered three rooms in succession. The first contained nothing unusual. The second contained seven potted marijuana plants with a fluorescent light suspended above them. In the third was Riggs, along with a woman later identified as the child’s babysitter. After his arrest, Riggs confessed to growing the marijuana.
The State charged Riggs with manufacturing cannabis and possessing drug paraphernalia. Riggs pled not guilty and moved to suppress the evidence, claiming it was the fruit of an unreasonable search. At the suppression hearing, the State argued that exigent circumstances justified the warrantless entry. The trial court’s suppression of the evidence was reversed by the Second District. See State v. Riggs, 890 So.2d 465 (Fla. 2d DCA 2004). The Florida Supreme Court agreed with the Second District that the police officers had an objectively reasonable basis to believe that the child’s caretaker was in need of medical attention and was inside the defendant’s apartment.[8] The court held that “authorities may enter a private dwelling based on a reasonable fear of a medical emergency.”[9] Riggs, 918 So.2d at 281. In its opinion, the court reviewed its three leading cases involving warrantless entries based on feared medical emergencies:
Unlike the United States Supreme Court, we have addressed this issue several times and have upheld warrantless entries motivated by feared medical emergencies. Three cases stand out. In the first, we upheld a warrantless entry where the police tried to identify a chemical that had apparently poisoned seven children then in critical condition. Richardson v. State, 247 So.2d 296, 297-98 (Fla.1971). We emphasized that the “searches of the premises were made for the purpose of aiding doctors to save the children’s lives and before defendant became [a] suspect.” Id. at 298.
*613 In the second case, we upheld a war-rantless entry to prevent a feared suicide attempt. Turner v. State, 645 So.2d 444 (Fla.1994). The defendant opened the door of his motel room to police and, leaving it ajar, walked back to his bed. He then pulled a gun and pointed it at his head. Confirming that “officers can make warrantless entries if they reasonably believe a person inside has immediate need,” we held that “[t]his was such an emergency, so the officers did not err in entering Turner’s motel room. And, once legally inside the room, police could seize evidence in plain view.” Id. at 447.
In the third case, we held that defense counsel in a death-penalty trial was not deficient in failing to move to suppress evidence based on a warrantless entry into the defendant’s home. See Zakrzewski v. State, 866 So.2d 688, 693-95 (Fla.2003). The police had received reports that the defendant failed to attend an Air Force class, that his home had a broken window, and that his mail was accumulating. An officer entered the defendant’s home through the broken window because he “feared for the welfare of whomever may have been in the house at that time.” Id. at 695 (quoting officer’s testimony). We agreed that a motion to suppress would have been futile because the officer “did not enter [the defendant’s] home with the intent to seize evidence or make an arrest.” Id.
In all three cases, when the police entered the dwelling they suspected some kind of medical emergency. In Richardson, they did not know if they would find the unidentified poison. In Turner, they did not know if the defendant actually intended to kill himself. In Zakrzewski, they did not know why the defendant was missing. We deemed each entry reasonable. Our decisions therefore confirm that authorities may enter a private dwelling based on a reasonable fear of a medical emergency. In those limited circumstances, the sanctity of human life becomes more important than the sanctity of the home.
Id. at 280-81. The common denominator in each of the supreme court cases cited in Riggs is the presence of objective evidence pointing to a grave emergency inside the premises entered requiring immediate action by the police. That is simply not present here.
The State maintains, and the majority agrees, that Fourth Amendment jurisprudence, and Riggs in particular, support the trial court’s conclusion that the deputy acted reasonably in entering Ortiz’s home. However, unlike in Riggs or the cases it cited, here, the State offered no evidence to demonstrate an objectively reasonable basis to believe that the child’s parents were: (a) inside the home and (b) likely in need of medical attention. When the deputy and child arrived at the house, there was no indication of foul play and no car was in the driveway. The house was dark and appeared empty. The deputy testified that he went into the home in an effort to reunite the child with his parents, not because of any perceived medical or other emergency, and only became concerned for the well-being of the child’s parents when confronted with the locked master bedroom door. There is absolutely no evidence of a “grave emergency” as was found in Riggs, Richardson, Turner and Zakrzewski. To the contrary, there was a complete absence of evidence suggesting that the parents were even at home, except for the child’s statement that his parents should be home. Since this six-year-old child had been at school all day, that information seems highly unreliable.
The conclusion that the State did not establish that an emergency situation ex *614 isted justifying the intrusion into the home does not detract from the trial court’s finding that the deputy’s actions were well intended. However, the deputy’s “good intentions” to reunite the child with his parents do not control a determination of whether an emergency objectively appeared so as to justify law enforcement’s warrantless intrusion into the home. The test for such a determination is an objective one, not a subjective one. See Rolling v. State, 695 So.2d 278, 293-94 (Fla.1997) (holding that to permit warrantless entry into home in emergency, objectively reasonable circumstances must exist that provide basis for officer to believe there is immediate need for police assistance for protection of life). Here, with no reasonable basis to believe the parents were in the home, let alone in need of assistance, there was no emergency demonstrated justifying the entry.[10] The officer must have “specific and articulable facts which, taken with rational inferences from those facts, reasonably warrant [the] intrusion.” State v. Alexander, 124 Md.App. 258, 721 A.2d 275, 285-85 (1998).
To justify a warrantless entry under the emergency aid exception, the police must have a reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched. State v. Gill, 755 N.W.2d 454 (N.D.2008); see State v. Fisher, 141 Ariz. 227, 686 P.2d 750, 760-61 (1984); Lubenow v. North Dakota State Highway Comm’r, 438 N.W.2d 528, 533 (N.D.1989); see also 3 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 6.6(a) (4th ed. 2004). The emergency aid exception does not give police officers carte blanche to make a warrantless entry whenever there is a theoretical possibility that another’s life or safety may be in danger; rather, there must be an objectively reasonable belief that another’s life or safety is in danger. See Brigham City, Utah v. Stuart, 547 U.S. 398, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006). The emergency aid exception to the Fourth Amendment requires both an immediate crisis and the probability that assistance will be helpful. People v. Smith, 40 P.3d 1287, 1290 (Colo.2002); People v. Amato, 193 Colo. 57, 562 P.2d 422, 424 (1977).
The majority and the concurring opinions also argue for the application of the “community caretaking” exception first enunciated in Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), a case involving an automobile search. In Dombrowski, the Supreme Court held that Wisconsin police officers, who had arrested a Chicago police officer for driving while intoxicated, did not violate the Fourth Amendment in searching the defendant’s automobile trunk for a service revolver, which the arresting officers believed Chicago police officers were required to carry at all times. The Court concluded that the warrantless search of the impounded vehicle’s trunk was “constitutionally reasonable” because it was incident to the community caretaking function of the arresting officers to protect “the safety of the general public who might be endangered if an intruder removed a revolver from the trunk of the vehicle.” 413 U.S. at 447, 93 S.Ct. 2523. The Court explained:
Because of the extensive regulation of motor vehicles and trafile, and also because of the frequency with which a *615 vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office. Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature. Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.
Id. at 441, 98 S.Ct. 2523 (emphasis added).
In large part, because the community caretaking function exception arose in the context of automobile searches, and given the historical distinction for Fourth Amendment purposes between automobiles and dwellings, Dombrowski, 413 U.S. at 447-48, 93 S.Ct. 2523 many courts have limited the exception to automobile searches and have declined to expand it to the warrantless entry of a residence. See, e.g., United States v. McGough, 412 F.3d 1232, 1238 (11th Cir.2005) (stating “we have never explicitly held that the community caretaking functions of a police officer permits the warrantless entry into a private home,” and holding that officers’ war-rantless entry not objectively reasonable when not justified by any compelling exigency); United States v. Erickson, 991 F.2d 529 (9th Cir.1993) (refusing to extend community caretaking function to warrant-less search of private home); United States v. Pichany, 687 F.2d 204 (7th Cir.1982) (refusing to extend community care-taking function to warrantless search of warehouse); State v. Gill, 755 N.W.2d 454 (N.D.2008) (refusing to apply exception to warrantless search of dwelling). As the Eleventh Circuit stated in McGough, “Were we to apply the community caretak-ing exception ... in this case, we would undermine the [Fourth] Amendment’s most fundamental premise: searches inside the home, without a warrant, are presumptively unreasonable.” 412 F.3d at 1239. Other courts, however, have applied the exception to validate entry into a home. See, e.g., United States v. Rohrig, 98 F.3d 1506 (6th Cir.1996) (holding that officer’s warrantless entry into home was reasonable and motivated by community caretaking interest in quelling loud noise); United States v. Nord, 586 F.2d 1288 (8th Cir.1978) (upholding warrantless entry of home).
The Florida cases that have relied on the community caretaker exception have done so only in the context of vehicle and boat searches.[11] And perhaps more importantly, the Florida Supreme Court expressly declined to adopt or rely on the community earetaking exception when given the opportunity to consider it in Riggs, because, as the court observed, Dombrowski “was expressly limited to the automobile context.” 918 So.2d at 280 n. 1. Other than situations involving the medical emergency exception, until today, the community caretaker exception has not been applied in Florida as a separate exception to the Fourth Amendment to validate an entry into a residence.[12]
*616 In denying Ortiz’s motion to suppress, the trial court also concluded that the six-year-old child had the apparent authority to allow the deputy access to the home. The majority correctly does not rely on the child’s consent to justify the entry. It is well settled that “[i]n the absence of a warrant or exigent circumstances justifying a search, the State has the burden of proving the police were given free and voluntary consent to enter the premises by someone with actual or apparent authority to do so.” Williams v. State, 788 So.2d 334, 336 (Fla. 5th DCA 2001). A minor may provide valid third-party consent for a warrantless entry of a home that the minor shares with a parent if the State can establish that: (1) the minor shares the home with an absent, non-consenting parent; (2) the police officer conducting the entry into the home reasonably believes, based on articulable facts, that the minor shares common authority with the parent to allow entry into the home; and (3) by clear and convincing evidence, the minor’s consent was freely and voluntarily given under the totality of the circumstances. Saavedra v. State, 622 So.2d 952, 954 (Fla.1993) (adopting common authority test to determine validity of third-party consent set out in United States v. Matlock, 415 U.S. 164, 170, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), which held that voluntary consent to search not limited to defendant but can be obtained from third party with common authority over or other sufficient relationship to premises or effects sought to be inspected).[13]
However, before an officer may be admitted into areas of the home other than common living areas, the officer must have a reasonable belief that the child consenting to the entry shares common authority over those areas. In determining the reasonableness of the police officer’s belief, courts should consider the minor’s age, maturity and intelligence. Saavedra, 622 So.2d at 958. In a directive relevant to the instant case, the Saavedra court stated:
The courts should also consider any other facts which might show that a police officer reasonably believed that a minor shared joint authority over the home, such as whether the minor had permission to allow entry into the home, whether the minor had a key to the home, and whether the minor shared common household duties with the parent. Certainly, it would be unreasonable to suggest that a child of tender years shared common authority with the parent over entry into a home. See Laasch v. State, 84 Wis.2d 587, 267 N.W.2d 278, 282 (1978) (holding that the state did not show that defendant’s five-year-old son possessed the capacity, the intelligence, or the authority to give constitutionally effective consent).
Id. The State had the burden of demonstrating the child’s authority to consent to the entry. Because it offered no evidence on the matter, the trial court’s conclusion that the child could and did give consent to *617 the entry is without any evidential foundation. Even assuming that the child had the authority, actual or apparent, to consent to the deputy’s entry into the common areas of the home, the record fails to establish that the child could validly consent to entry of the locked master bedroom. Neither does the record demonstrate that once at the locked bedroom door, any “grave emergency” was apparent that authorized the deputy to enter the bedroom.
Under the facts presented here, the deputy’s warrantless entry into the home and the locked bedroom did not fall within the medical emergency exception to the warrant requirement. Nor did the State establish that the deputy had valid consent to enter the locked bedroom. Consequently, I would reverse the trial court’s order denying the motion to suppress evidence.
There is no doubt that this case presents a difficult issue. However, given the high value our society places on the sanctity of an individual’s home, we should resolve the question against even well-intended intrusions into the home by the government. Courts must act as vigilant gatekeepers to insure that exceptions do not consume the cherished protections of the Fourth Amendment. The majority’s decision fails in that respect and will allow the exceptions to swallow the rule.[14]
COHEN, J., concurs.

. The Riggs court disapproved the majority opinion in Eason v. State, 546 So.2d 57 (Fla. 1st DCA 1989), where, on similar facts, the First District, over the dissent of Chief Judge Smith, found an entry violated the Fourth Amendment. The Riggs court noted that in Eason, the young boy actually led the police to a particular apartment and said "Mommy’s in there,” a fact that may strengthen the validity of an ensuing entry based on suspicion of a medical emergency.

. It is immaterial whether an actual medical emergency existed; rather, the test is whether police "reasonably believed an emergency existed at the time of the warrantless entry.” Eastes v. State, 960 So.2d 873, 875 (Fla. 5th DCA 2007).

. If the deputy was not legally inside the home when he observed the drugs in the bathroom, the plain view doctrine is inapplicable. See Ensor v. State, 403 So.2d 349, 352 (Fla.1981). As a result, Ortiz's statements to the deputy should also be suppressed as fruit of the poisonous tree. See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

. See Castella v. State, 959 So.2d 1285 (Fla. 4th DCA 2007); State v. Patrick, 437 So.2d 217 (Fla. 4th DCA 1983); Lovett v. State, 403 So.2d 1079 (Fla. 1st DCA 1981); Cobb v. State, 378 So.2d 82 (Fla. 3d DCA 1979).

. In his concurring opinion, Judge Torpy cites Herring v. United States, - U.S. -, 129 S.Ct. 695, 702, 172 L.Ed.2d 496 (2009) for the proposition that "[t]o trigger the exclusionary rule, police conduct must be suffi *616 ciently deliberate that exclusion can meaningfully deter it....” [The] exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.” Whether the exclusionary rule should apply here is an interesting question but one that was not argued by the State below and hence, not preserved for review.

. Third-party consent may be valid under either an actual or apparent authority theory. In Illinois v. Rodriguez, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), the United States Supreme Court extended the validity of third-party consent and held that a search is constitutional if based upon the consent of a third party when an officer has a reasonable basis to believe that the consenting person has common authority over the premises.

. Judge Toipy’s concurrence is premised, in part, on his supposition that “it is not likely that a parent would forget to pick up a child of this age at this time of day for this period of time.” However, Deputy Mercado testified that the Sheriffs Department routinely receives forgotten child calls.