COBB, J.
The issue raised by this appeal is the validity of a stop and subsequent discovery of cocaine on the person of the defendant, Randy Thomas. The defendant’s motion to suppress was denied, giving rise to the instant appeal of that dispositive ruling.
The facts reveal that the sheriffs office received a call that a fight was taking place at a certain location south of De-Land, Florida. On their way to investigate, the deputies passed Thomas walking in a northerly direction approximately 2% blocks away from the location where the call originated. Thomas had blood on his face, chest and arms. When questioned by the officers, he said he was walking to DeLand, a distance of some five or six miles. The testimony of the officers was that Thomas at this point was loud, incoherent, and flailing his arms around.
The officers detained Thomas at that point and considered whether to Baker Act him.[1] One of the officers conducted a pat-down search of Thomas after the latter’s statement that he was carrying weapons: “guns, knives and all kinds of stuff.” No weapon was detected but drug paraphernalia, which the officers testified felt like a weapon, and cocaine were found on Thomas’s person.
Thomas was charged with possession of cocaine and filed a motion to suppress. The trial judge denied the motion finding the stop and search lawful “as a result of law enforcement exercising other activities other than criminal law enforcement.” On appeal Thomas argues that his detention cannot be sustained as 1) a consensual encounter; 2) an investigatory Terry[2] stop; or 3) an arrest supported by probable cause. He maintains his detention was not supported by any well-founded suspicion of criminal activity. See Jeralds v. State, 664 So.2d 56 (Fla. 5th DCA 1995). Thomas also cites to various other cases in regard to the lack of support for Terry stops and arrests.
None of the cases cited by Thomas, however, deals with an initial detention unrelated to the suspicion of criminal activity. In the instant case, the trial judge found that the initial detention was justified by the Florida Mental Health Act, Chapter 394, Florida Statutes (1997). At the time of the initial detention, Thomas was covered in blood, had some type of head injury, was speaking incoherently, and flailing his arms in an irrational manner. Section 394.463(1), Florida Statutes, provides:
A person may be taken to a receiving facility for involuntary examination if there is reason to believe that he or she *365 is mentally ill and because of his or her mental illness:
[[Image here]]
(b)l. Without care or treatment, the person is likely to suffer from neglect or refuse to care for himself or herself; such neglect or refusal poses a real and present threat of substantial harm to his or her well-being; and it is not apparent that such harm may be avoided through the help of willing family members or friends or the provision of other services ....
According to the testimony of the officers, which was accepted as truthful by the trial court, it was their intention to protect Thomas from himself and to initiate involuntary examination pursuant to the Baker Act. After Thomas’s claim to possession of weapons, the search producing the cocaine was justified for the safety of the officers and of Thomas. At that point, the officers apparently decided to initiate criminal charges against Thomas rather than to proceed with involuntary examination pursuant to the Baker Act.
AFFIRMED.
PETERSON and GRIFFIN, JJ., concur.

. See § 394.463, Fla. Stat.

. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).