960 So.2d 873 (2007)
Johnathan EASTES, Appellant,
v.
STATE of Florida, Appellee.
No. 5D06-3583.
District Court of Appeal of Florida, Fifth District.
July 13, 2007.
*874 James S. Purdy, Public Defender, and David S. Morgan, Assistant Public Defender, Daytona Beach, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Douglas T. Squire, Assistant Attorney General, Daytona Beach, for Appellee.
EVANDER, J.
Eastes was convicted, after a jury trial, of battery of a law enforcement officer,[1] resisting an officer with violence,[2] and resisting an officer without violence.[3] He contends the trial court erred in denying his motion to suppress evidence and his motion for judgment of acquittal. We affirm.
The charges against Eastes stem from an incident on May 21, 2005. Melbourne police officers Wical and Stover were dispatched to Eastes' apartment at approximately 3:00 a.m. The officers were advised: "Disturbance call, possible suicide. Somebody who was potentially suicidal was at the house."[4] Upon their arrival, officers Wical and Stover observed Eastes standing in the doorway of his apartment. Eastes appeared angry and was clenching a beer in one hand. The other hand was clenched to his side. Eastes had blood from his forearms down to his fingers on both arms.
Eastes refused to respond to the officers' inquiries as to whether there was anything wrong. Furthermore, the officers were unable to determine the cause of the blood on Eastes' arms. Officer Wical was able to look into Eastes' apartment and observed broken glass on the floor as well as furniture in a state of disarray. Eastes then walked into his apartment. Officer Wical followed Eastes. At that time, Officer Wical observed that Eastes had fresh blood dripping from his arms. The microwave looked as though it had been punched as there was a hole the size of a fist in the middle of the door. There *875 was blood on the microwave door, on a table, and on the floor. Wical also concluded Eastes was very intoxicated.
At this point, Officer Wical decided to take Eastes to Circles of Care, a local mental health facility. Wical advised Eastes of his intent to take him to Circles of Care for a mental health evaluation. Wical explained to Eastes that he was not under arrest.
Eastes refused to cooperate with Officer Wical. He eventually began to swing his arms at Wical and Stover. By this time, Wical and Stover had been joined by Officer Mayada Ashouri. Ashouri tried to grab Eastes' arm. As soon as she did, Eastes tried to punch Ashouri. He missed with the first punch but connected to Ashouri's head with the second punch. Wical then "tasered" Eastes. Eastes was handcuffed, placed under arrest, and taken to a patrol car. In route, Eastes started crying and stated he wanted to kill himself.
Officer Wical escorted Eastes to the emergency room of the local hospital. It was determined that Eastes' lacerations were minor and no stitches were required. Eastes was later transported to the Melbourne Police Department for the booking process. There, he refused to sign any paperwork or to be fingerprinted. He was not taken to Circles of Care because that facility will not take a person who is under arrest. In his police report, Officer Wical did request that Eastes be sent to the jail's "physician unit." Wical testified that the jail's "physician unit" had mental health staff to treat suicidal individuals.
As a result of the events which occurred at his apartment, Eastes was charged with battery of a law enforcement officer and resisting an officer with violence. He was also charged with resisting an officer without violence as a result of his refusal to cooperate with police during the booking process at the Melbourne Police Department.
On appeal, Eastes first argues that the trial court erred in failing to exclude any evidence obtained subsequent to Officer Wical's warrantless entry into his apartment. Although it is unclear as to what evidence Eastes requested to be suppressed, we will address the legality of Officer Wical's entry into the apartment. The Fourth Amendment[5] does not bar a police officer from making a warrantless entry into a residence when the officer reasonably believes that a person within is in need of immediate aid. See Mincey v. Arizona, 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); Riggs v. State, 918 So.2d 274, 279 (Fla.2005).
Our decisions therefore confirm that authorities may enter a private dwelling based on a reasonable fear of a medical emergency. In those limited circumstances, the sanctity of human life becomes more important than the sanctity of the home.
Riggs, 918 So.2d at 281. Furthermore, it is immaterial whether an actual emergency existed. The test is whether the officer reasonably believed an emergency existed at the time of the warrantless entry. Seibert v. State, 923 So.2d 460, 468 (Fla.), cert. denied, ___ U.S. ___, 127 S.Ct. 198, 166 L.Ed.2d 162 (2006). The officer's search must be "strictly circumscribed by the exigencies which justify its initiation." Mincey, 437 U.S. at 393, 98 S.Ct. 2408. Thus, *876 an officer must cease a search once it is determined that no emergency exists. Seibert, 923 So.2d at 468.
In the present case, Officer Wical had a reasonable basis to believe that a medical emergency existed at the time he entered Eastes' apartment. The officers were responding to a "disturbance, possible suicidal person" call. Eastes had blood on both arms from his forearms to his fingers. There was broken glass on his apartment floor and his furniture was in disarray. Eastes made no attempt to dispel Wical's concerns for his (Eastes') safety at any time prior to Wical's entry into the apartment.
The concerns that justified Officer Wical's entry into the apartment were not alleviated prior to Eastes' battery of Officer Ashouri. After entering Eastes' apartment, Wical observed Eastes' arms were still bleeding and there was blood on the microwave door, on a table, and on the floor. Additionally, Eastes continued to refuse to provide any information to Wical, which might alleviate Wical's belief that Eastes was a threat to harm himself. The evidence amply supports the trial court's conclusion that Officer Wical had legally entered Eastes' apartment.
Eastes next contends the trial court erred in denying his motion for judgment of acquittal as to the battery of a law enforcement officer and the resisting an officer with violence charges. Specifically, Eastes claims the evidence was insufficient to establish that he met the criteria for an involuntary examination, and therefore, the officers were not engaged in the lawful execution of a legal duty. We reject this argument.
In non-arrest cases, the State must prove that the officer was engaged in the lawful execution of a legal duty in order to convict a defendant of battery of a law enforcement officer or resisting an officer with violence. Tillman v. State, 934 So.2d 1263 (Fla.2006).[6]
The Florida Mental Health Act[7] authorizes a law enforcement officer to take a person who appears to meet the criteria for involuntary examination into custody. Lukehart v. State, 776 So.2d 906, 914 n. 4 (Fla.2000), cert. denied, 533 U.S. 934, 121 S.Ct. 2561, 150 L.Ed.2d 726 (2001). The criteria for an involuntary examination are set forth in section 394.463(1), Florida Statutes (as amended effective Jan. 1, 2005):
(1) Criteria.A person may be taken to a receiving facility for involuntary examination if there is reason to believe that the person has a mental illness and because of his or her mental illness:
(a)1. The person has refused voluntary examination after conscientious explanation and disclosure of the purpose of the examination; or
2. The person is unable to determine for himself or herself whether examination is necessary; and
(b)1. Without care or treatment, the person is likely to suffer from neglect or refuse to care for himself or herself; such neglect or refusal poses a real and present threat of substantial harm to his or her well-being; and it is not apparent *877 that such harm may be avoided through the help of willing family members or friends or the provision of other services; or
2. There is a substantial likelihood that without care or treatment the person will cause serious bodily harm to himself or herself or others in the near future, as evidenced by recent behavior.
Here, the evidence supports a determination that Eastes met the criteria for an involuntary examination. His behavior, his physical condition, and the condition of his apartment suggested a substantial likelihood that, without care or treatment, Eastes would cause serious injury to himself in the near future. The evidence further supported a conclusion that Eastes was possibly suicidal and unable to determine for himself whether an examination was necessary. Under these circumstances, the officers were justified in placing him in protective custody for involuntary examination. See Thomas v. State, 748 So.2d 363 (Fla. 5th DCA 2000) (holding that officers were authorized to detain the defendant pursuant to the Florida Mental Health Act where defendant was covered in blood, had some type of head injury, was speaking incoherently, and flailing his arms in an irrational manner). There was sufficient evidence to support a finding that the officers were engaged in the lawful execution of a legal duty at the time of Eastes' violent actions.
AFFIRMED.
PLEUS and LAWSON, JJ., concur.
NOTES
[1] § 784.07, Fla. Stat. (2005).
[2] § 843.01, Fla. Stat. (2005).
[3] § 843.02, Fla. Stat. (2005).
[4] The record does not reflect who provided this information to the police department.
[5] Amendment IV, United States Constitution:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
[6] As to the crime of battery of a law enforcement officer, section 784.07, Florida Statutes (2005), utilizes the language "is engaged in the lawful performance of his or her duties." As to the offense of resisting an officer with violence, section 843.01, Florida Statutes (2005), uses the language "in the lawful execution of any legal duty." The Florida Supreme Court concluded these elements were functionally equivalent. Tillman, 934 So.2d at 1266, n. 2.
[7] §§ 394.451-.4789, Fla. Stat. (as amended effective Jan. 1, 2005).