[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-11500

_____

D.C. Docket No. 5:15-cv-02325-AKK

SHEENA YARBROUGH,

Plaintiff-Appellant,

versus

DECATUR HOUSING AUTHORITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(October 29, 2019)

Before WILLIAM PRYOR and MARTIN, Circuit Judges, and VRATIL,[*] District
Judge.

WILLIAM PRYOR, Circuit Judge:

_____

[*] Honorable Kathryn H. Vratil, United States District Judge for the District of Kansas,
sitting by designation.

This appeal requires us to decide whether, under the Due Process Clause of the Fourteenth Amendment, some evidence supported the decision of the Decatur Housing Authority to terminate Shenna Yarbrough's housing voucher issued under Section 8 of the Housing Act of 1937, 42 U.S.C. § 1437f. The Authority terminated her voucher because she had "violated her agreement with the Authority and her lease by engaging in drug-related criminal activity." Yarbrough filed a complaint against the Authority, *id.* § 1983, that the termination violated both a federal regulation providing that "[f]actual determinations" in a voucher-termination hearing "shall be based on a preponderance of the evidence," 24 C.F.R. § 982.555(e)(6), and the constitutional right to due process of law. The district court granted summary judgment to the Authority. A panel of this Court reversed because the indictments and arrest records presented at the hearing failed to establish that Yarbrough engaged in drug-related criminal activity under the preponderance standard, but we later vacated that decision and reheard that issue en banc. *Yarbrough v. Decatur Hous. Auth. (Yarbrough I)*, 905 F.3d 1222, 1226 (11th Cir. 2018), *rev'd en banc*, 931 F.3d 1322 (11th Cir. 2019). The en banc court overruled our earlier precedent, *Basco v. Machin*, 514 F.3d 1177 (11th Cir. 2008), which underpinned the panel's decision, but it left it to the panel on remand to address Yarbrough's remaining due process arguments. We now affirm the summary judgment in favor of the Authority.

2

## I. BACKGROUND

Sheena Yarbrough was a qualified participant in the Section 8 Housing Assistance program operated by the Decatur Housing Authority under the administration of the Department of Housing and Urban Development. The Section 8 program provides low-income families assistance with rental payments. 42 U.S.C. § 1437f(a). Public housing authorities have the power to terminate assistance under Section 8 if any member of a participating family engages in drug-related criminal activity. 24 C.F.R. § 982.551(l); *see also id.* § 982.553(b)(1)(iii). The regulatory requirement to refrain from drug-related criminal activity was incorporated into the terms of Yarbrough's agreement with the Authority. To obtain housing benefits, she signed a document issued by the Department of Housing and Urban Development entitled "Obligations of the Participating [F]amily," which provided that "members of the family may not engage in drug-related criminal activity."

In September 2012, Yarbrough was arrested for selling Xanax and Lortab to an undercover police informant. On learning of her arrest, the Authority notified Yarbrough that it intended to terminate her program assistance. At Yarbrough's request, the Authority conducted a hearing at which a hearing officer found that Yarbrough had engaged in drug-related criminal activity and upheld the decision.

3

But based on legal advice, the Authority decided to postpone the termination of Yarbrough's housing assistance "until a court date or decision was rendered."

On April 11, 2013, a grand jury for the Circuit Court of Limestone County, Alabama, indicted Yarbrough on two felony counts of unlawful distribution of a controlled substance. On October 8, 2015, with the charges still pending, the Authority sent Yarbrough a second notice of its intent to terminate her benefits. At Yarbrough's request, the Authority conducted a second informal hearing on November 10, 2015. Yarbrough attended the hearing and was represented by counsel. Her caseworker, Kenyetta Gray, attended the hearing and presented testimony and evidence on behalf of the Authority.

At the hearing, Gray presented the indictments and arrest records and testified that they established that Yarbrough had sold Xanax and Lortab to an undercover police informant. Gray also testified that the charges were still pending. Yarbrough testified and admitted the arrests. She did not deny that she had sold prescription medications to the undercover informant or otherwise dispute the factual basis of the charges. Instead, she asserted that the charges would be dismissed upon payment of court costs. Yarbrough also argued that the Authority had agreed to wait for the outcome of the criminal proceedings before terminating her benefits.

4

The hearing officer issued a written decision that Yarbrough "violated her agreement with the Authority and her lease by engaging in drug-related criminal activity." The decision explained that the evidence of Yarbrough's arrest and indictments was sufficient to establish that Yarbrough engaged in drug-related criminal activity. The hearing officer acknowledged that Yarbrough had presented "credible evidence that the cases will be dismissed on payment of court costs." But he determined that because the charges remained pending and the indictments were issued "by a duly impaneled grand jury," the evidence was sufficient to establish "that more likely than not, i.e. by a preponderance of the evidence, Ms. Yarbrough engaged in drug related criminal activity in violation of the terms of her agreement with the Authority."

Yarbrough filed a complaint against the Authority, *see* 42 U.S.C. § 1983, in which she alleged that the Authority violated the regulation requiring a decision based on a preponderance of the evidence, 24 C.F.R. § 982.555(e)(6), and the Due Process Clause of the Fourteenth Amendment by basing its termination decision on insufficient evidence and by relying exclusively on hearsay. After discovery, the district court granted summary judgment in favor of the Authority on the grounds that the indictments established that Yarbrough engaged in drug-related criminal activity under a preponderance-of-the-evidence standard and that relying on the indictments comported with due process.

5

A panel of this Court reversed and ruled "that the evidence before the hearing officer was legally insufficient to sustain the Authority's decision to terminate Yarbrough's Section 8 voucher under the preponderance standard in the applicable regulation, 24 C.F.R. § 982.555(e)(6)." *Yarbrough I*, 905 F.3d at 1226. To reach this conclusion, the panel relied on our decision in *Basco*, where we assumed that compliance with that regulation is enforceable in a suit brought by a private party under section 1983 and held that in a proceeding to terminate Section 8 benefits, a public housing agency "has the burden of persuasion and must initially present sufficient evidence to establish a prima facie case" that the recipient committed an act that licenses termination of his voucher under the standard of proof imposed by the regulation. 514 F.3d at 1182. The panel concluded that *Basco* mandated reversal of the summary judgment because a grand jury determination "that the evidence against Yarbrough was sufficient to support a reasonable belief in guilt" under the probable-cause standard applicable to grand jury proceedings "cannot in itself prove that she more likely than not committed the charged offenses, any more than an indictment for a criminal offense can conclusively prove liability for a civil offense with the same elements." *Yarbrough I*, 905 F.3d at 1225–26. The panel did not address Yarbrough's due process arguments. *Id.* at 1225. A separate concurring opinion suggested that *Basco* was wrong and should be overruled en banc. *Id.* at 1226–31 (W. Pryor, J., concurring).

6

The en banc court vacated the panel opinion, granted rehearing, and held that the regulation creating a preponderance standard for voucher termination proceedings, 24 C.F.R. § 982.555(e)(6), is not enforceable through section 1983, and it overruled that part of our decision in *Basco* to the contrary. *Yarbrough v. Decatur Hous. Auth.*, 931 F.3d 1322, 1327 (11th Cir. 2019) (en banc). Before the en banc court, Yarbrough contended that even if the regulatory standard of proof is not enforceable through section 1983, the termination decision violated the Due Process Clause of the Fourteenth Amendment. She argued that due process requires that voucher-termination decisions be based on at least "some evidence," and the Authority's decision did not satisfy this standard. And she argued that due process prohibits a housing authority from basing a termination decision exclusively on uncorroborated hearsay. The en banc court declined to address these arguments and left them to the panel to resolve on remand. *Id.*

## II. STANDARD OF REVIEW

We review a "summary judgment de novo, applying the same legal standards used by the district court." *Galvez v. Bruce*, 552 F.3d 1238, 1241 (11th Cir. 2008).

## III. DISCUSSION

A claim under section 1983 asserting a "denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected

7

liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). The parties agree that Yarbrough had a protected property interest in the continued receipt of housing benefits and that the termination of her voucher qualified as state action, so we will assume those elements of the claim are satisfied for purposes of this decision. *See Foxy Lady, Inc. v. City of Atlanta*, 347 F.3d 1232, 1236 (11th Cir. 2003) (declining to address the first two elements of a procedural due process claim because they were undisputed).

We agree with Yarbrough that the Due Process Clause mandates some evidentiary support for voucher-termination decisions. Procedural due process ordinarily requires decisions that would deprive a person of a liberty or property interest to be based on a modicum of evidence. *See, e.g.*, *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 447 (1985) (holding that "where good time credits" earned by prisoners "constitute a protected liberty interest, a decision to revoke such credits must be supported by some evidence"); *Douglas v. Buder*, 412 U.S. 430, 432 (1973) (holding that a finding that a person violated the conditions of his probation "was so totally devoid of evidentiary support as to be invalid under the Due Process Clause"); *Schware v. Bd. of Bar Exam'rs*, 353 U.S. 232, 239 (1957) (holding that a state cannot exclude a person from the practice of law based on failure to satisfy its standards of qualification "when there is no basis

8

for their finding that he fails to meet these standards"); *United States ex rel. Vajtauer v. Comm'r of Immigration*, 273 U.S. 103, 106 (1927) (holding that a deportation order violates due process if it was not "supported by any evidence"). The rationale for this rule is that "a decision without basis in fact would tend to indicate that the procedures, no matter how scrupulously followed, had been a mockery of their intended purpose—rational decisionmaking." *Holley v. Seminole Cty. Sch. Dist.*, 755 F.2d 1492, 1499 (11th Cir. 1985). In our view, a decision to terminate a Section 8 voucher that was founded on no evidence would be just as much of a farce as a decision to revoke good time credits, *Hill*, 472 U.S. at 447, or to exclude a person from the practice of the law, *Schware*, 353 U.S. at 239, that was devoid of any evidentiary support. Assuming that a voucher recipient has a property interest in the continued receipt of benefits, we conclude that a voucher-termination decision must be supported by some evidence.

Nevertheless, this requirement does not mandate a robust substantive evaluation of the sufficiency of the evidence supporting an administrative determination. Indeed, if it did, it would conflict with an extensive body of caselaw affirming that "[t]he Fourteenth Amendment does not guarantee that all decisions by state officials will be correct." *Lavine v. Milne*, 424 U.S. 577, 587 (1976); *see also Martinez v. California*, 444 U.S. 277, 284 n.9 (1980) ("[E]ven if a state decision does deprive an individual of life or property, and even if that decision is

9

erroneous, it does not necessarily follow that the decision violated that individual's right to due process."); *Bishop v. Wood*, 426 U.S. 341, 350 (1976) ("The Due Process Clause . . . is not a guarantee against incorrect or ill-advised . . . decisions."); *Vajtauer*, 273 U.S. at 106 (holding that "a want of due process is not established by showing merely that the decision is erroneous"). As the Supreme Court has explained, "the very nature of the due process inquiry indicates that the fundamental fairness of a particular procedure does not turn on the result obtained in any individual case." *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 321 (1985). So the precedents holding that procedural due process prohibits decisions predicated on no evidence must not be understood to license review of the correctness of an agency decision.

Instead, these precedents establish only that a procedure that permits decisions founded on no evidence violates the Due Process Clauses. *See Hill*, 472 U.S. at 447 (requiring only "some evidence"); *Douglas*, 412 U.S. at 432 (holding that a due process violation occurred because the record was "totally devoid of evidentiary support"); *Schware*, 353 U.S. at 239 (violation occurred because there was "no basis" for the challenged finding); *Vajtauer*, 273 U.S. at 106 (violation occurs if decision is not "supported by any evidence"). As the Supreme Court explained in *Hill*, the form of minimal evidentiary review mandated in some contexts by procedural due process requires only "some evidence" that "supports

10

the decision" in question. 472 U.S. at 455. "This standard is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . .'" *Id.* (quoting *Vajtauer*, 273 U.S. at 106). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached . . . ." *Id.* at 455–56. The decision need only "have some basis in fact." *Id.* at 456.

The decision to terminate Yarbrough's voucher satisfies this standard. The Authority's decision was based on testimony from Gray, two grand jury indictments, arrest records, and testimony from Yarbrough herself. As noted, Yarbrough admitted the arrests and did not deny that she had sold prescription medications to an undercover informant or otherwise dispute the factual basis of the charges. This evidence supported the conclusion reached by the Authority, *id.* at 455–56, namely, that Yarbrough had engaged in drug-related criminal activity.

Yarbrough responds that the "some evidence" standard mandates a more searching form of review, akin to that prescribed by the "substantial evidence" standard familiar from administrative law, but we disagree. *Hill* itself explicitly contrasts the "some evidence" standard of review with "the stricter test of 'substantial evidence,'" 472 U.S. at 449, and with good reason. Substantial

11

evidence is a standard of statutory provenance. It does not derive from the

Constitution, but from judicial construction of the Wagner Act, 29 U.S.C. § 151 *et*

*seq.*, and was then grafted onto the Administrative Procedure Act, 5 U.S.C. § 551

*et seq.*, and other statutes, where it became a mainstay of judicial review of agency

action. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477–87 (1951)

(recounting the history of the substantial-evidence standard). The substantial-

evidence standard is also more demanding than the form of limited evidentiary

review contemplated by procedural due process. In particular, the substantial-

evidence standard requires evidence sufficient "to justify, if the trial were to a jury,

a refusal to direct a verdict when the conclusion sought to be drawn from it is one

of fact for the jury." *Id.* at 477 (citation and internal quotation marks omitted).

Although this standard "differs from the 'weight of evidence' or 'clearly

erroneous' standards frequently applied by appellate courts in their review of trial

court determinations of fact, like them it contemplates review for correctness."

*McDonald v. Bd. of Trs. of Univ. of Ill.*, 375 F. Supp. 95, 103 (N.D. Ill. 1974), *aff'd*

*and opinion adopted*, 503 F.2d 105, 105–06 (7th Cir. 1974). And as we have

explained, review for the correctness of an administrative determination would be

inconsistent with the rule that procedural due process "is not a guarantee against

incorrect or ill-advised . . . decisions." *Bishop*, 426 U.S. at 350. So the substantial-

evidence standard mandates an inquiry that "probes deeper into the record than

12

does a review for fairness which is the essence of a due process inquiry."
*McDonald*, 375 F. Supp. at 103.

Yarbrough points out that in *Holley* we stated that procedural due process mandates an inquiry into "whether the action taken is supported by substantial evidence," 755 F.2d at 1496 (citation and internal quotation marks omitted), and in *McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994) (en banc), we again said that procedural due process may require review to ensure "that there is 'substantial evidence'" supporting an administrative determination, *id.* at 1558 n.13 (quoting *Holley*, 755 F.2d at 1499). But these precedents use the phrase "substantial evidence" to denote the "minimum quantum of evidence," *Holley*, 755 F.3d at 1499 n.5, required by the "some evidence" standard. *Holley* equates a decision unsupported by substantial evidence as one "without basis in fact," *id.* at 1499, which is logically equivalent to *Hill*'s definition of a determination supported by "some evidence" as one with "some basis in fact," 472 U.S. at 456. *Holley* also states that "the 'substantial evidence test' under the Administrative Procedure Act" is "*closely related* to the procedural due process concept," which entails that those standards are not identical. 755 F.2d at 1499 (alterations adopted) (emphasis added) (citation and internal quotation marks omitted). *McKinney* does not provide any explanation of the meaning of the term "substantial evidence" apart from its references to *Holley* and the decision of the former Fifth Circuit in *Viverette v.*

13

*Lurleen B. Wallace State Junior Coll.*, 587 F.2d 191 (5th Cir. 1979), which likewise did not elaborate on the meaning of the term. *See id.* at 193–94. In the light of *Holley*'s specification of the meaning of its use of the phrase "substantial evidence," we conclude that where our precedents have used that phrase to denote a standard of review mandated by procedural due process, they did so with the evident intent of invoking the "some evidence" standard employed by the Supreme Court in *Hill* and its antecedents. They do not seek to apply the substantial-evidence standard familiar from administrative law.

Yarbrough also argues that *Hill* requires "evidence in the record that could support the conclusion reached," 472 U.S. at 455–56, and the determination reached by the Authority was that *the preponderance of the evidence* established that she engaged in drug-related criminal activity, but we disagree. Under the *Hill* standard, the conclusion that must be supported by "some evidence" is the factual finding that supports the agency's action, not its determination that the evidence supports that finding under a standard of proof provided by an agency regulation. *See Hill*, 472 U.S. at 457 (distinguishing the question whether "some evidence" supports a decision as required by procedural due process from the question whether the challenged "findings failed to meet evidentiary standards imposed by state law"). Otherwise, a party asserting that a decision violated due process because it was not based on evidence could effectively bootstrap his way into

14

holding the agency liable for failing to issue a decision supported by evidence sufficient under the standard of proof applicable to its proceedings by statute or regulation.

As we have explained, no procedural due process violation follows from an agency's failure to introduce evidence sufficient under the applicable standard of proof. Although due process may require a particular standard of proof in a certain kind of proceeding, *see, e.g.*, *Santosky v. Kramer*, 455 U.S. 745, 747–48 (1982) (holding that "[b]efore a State may sever . . . the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence"), the Due Process Clauses do not forbid garden-variety errors in applying standards of proof, regardless of the legal source of those standards. As a result, we conclude that the decision to terminate Yarbrough's voucher easily passes muster under the "some evidence" standard.

Yarbrough argues that procedural due process prohibits a housing authority from rendering a termination decision based solely on unreliable and non-probative hearsay, but we need not reach that issue. Nor must we decide whether procedural due process requires some assessment of the reliability and probative value of hearsay evidence. Yarbrough's indictments and arrest records, especially in the light of her own testimony, bear sufficient indicia of reliability and are adequately probative to constitute "some evidence" in support of the Authority's decision.

15

Yarbrough admitted the arrests, acknowledged the pending drug charges, and did not deny the underlying drug sales. Yarbrough's testimony supported the reliability of the hearsay evidence offered against her.

## IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of the Authority.

MARTIN, Circuit Judge, concurring:

The Majority Opinion properly recites that the Decatur Housing Authority did put forth some evidence in Sheena Yarbrough's case to support its decision to terminate her Section 8 housing voucher. I agree with the Majority, as well, that the evidence offered by the Authority was enough to uphold its termination decision under the standard set by Superintendent v. Hill, 472 U.S. 445, 105 S. Ct. 2768 (1985). I write separately, however, because I do not read Hill to foreclose the application of the "substantial evidence" standard, as apparently the Majority does. I think it important as well that the due process requirements in Hill are not exhaustive, insofar as the Supreme Court described additional requirements in Wolff v. McDonnell, 418 U.S. 539, 94 S. Ct. 2963 (1974). On these points, I respectfully disagree.

While it is certainly true that "some evidence" is required to terminate Section 8 housing vouchers under the Due Process Clause, I believe the Majority Opinion goes too far when it suggests that Hill rejected the "substantial evidence" standard. See Maj. Op. at 11–14. The Majority notes that Hill "explicitly contrasts the 'some evidence' standard of review with 'the stricter test of substantial evidence.'" Id. at 11 (quoting Hill, 472 U.S. at 449, 105 S. Ct. at 2770). True, the Hill Court did discuss both standards, but it observed that the question of "whether the Due Process Clause requires that a disciplinary board's findings of fact be

17

reviewed under a more stringent standard" was not before it.  Hill, 472 U.S. at 458–59, 105 S. Ct. at 2776 (Stevens, J., dissenting); see also id. at 459, 105 S. Ct. at 2770 (observing that the Massachusetts Supreme Judicial Court did not decide "whether the appropriate standard of review is 'some evidence' or the stricter test of 'substantial evidence.'").  I know rejection, and rejection of the substantial evidence standard is not what the Supreme Court did.  Nonetheless, the Majority Opinion undertakes to answer the open question of what is the proper standard of review and concludes that our precedent "invok[es] the 'some evidence' standard employed by the Supreme Court in Hill."  Maj. Op. at 14.  I regard this conclusion as going beyond both Hill as well as our decision in Holley v. Seminole County School District, 755 F.2d 1492 (11th Cir. 1985).

Holley was decided months before Hill, and the purpose of this Court's review in Holley was merely to determine whether, in that case, there was "a rational basis for the deprivation of an individual's property."  Id. at 1499.  Holley said there was.  See id. at 1499–1500 (holding that the testimony of several witnesses "support[ed] the Board's findings of 'cause' not to renew Holley's contract").  Holley did not conflate the "some evidence" and "substantial evidence" standards.  Id.  Neither did it reject the "substantial evidence" standard.  Id.  My reading of Hill and Holley does not support the conclusion that the "substantial evidence" standard and the "some evidence" standard are one and the

18

same, or that our Court has rejected the more demanding "substantial evidence" standard.

In my view, due process requires more than Hill's "some evidence" standard for the voucher-termination decision.  The Majority Opinion suggests that Supreme Court "precedents establish only that a procedure that permits decisions founded on no evidence violates the Due Process Clauses."  Maj. Op. at 10 (emphasis added).  But this statement overlooks the additional requirements described in Wolff, 418 U.S. at 563–67, 94 S. Ct. at 2978–80.  As the Supreme Court clarified, Hill "in no way abrogated" Wolff; rather, Hill should be considered "in addition to" the earlier Wolff decision.  Edwards v. Balisok, 520 U.S. 641, 648, 117 S. Ct. 1584, 1589 (1997).  So, in addition to "some evidence," due process in this voucher-termination case also requires: (1) advance "written notice of the charges"; and (2) "a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action."  Wolff, 418 U.S. at 563–67, 94 S. Ct. at 2978–80 (quotation marks omitted) (describing procedures extended to parolees facing revocation proceedings).

I therefore concur in the Majority's judgment that the Authority did put forth some evidence in to support its decision to terminate Yarbrough's Section 8 housing voucher, but not in the Majority Opinion's propositions that Hill rejected

19

the "substantial evidence" standard and that the due process requirements in <u>Hill</u> are exhaustive.