[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-12113
Non-Argument Calendar
_____

D.C. Docket No. 0:17-cv-61164-DPG


ERIC HARRISON,

                                                          Plaintiff-Appellant,

versus

DAVIDSON HOTEL COMPANY, LLC,
d.b.a. B Ocean Hotel,
CITY OF FORT LAUDERDALE,
Cynthia A. Everett, City Attorney; Alain E. Boileau,
CHERILYN VALENZUELA,
AARON BURK,
DANIEL GOWANS,

                                                          Defendants-Appellees.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 11, 2020)

Before ED CARNES, Chief Judge, MARTIN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Plaintiff Eric Harrison appeals the district court's grant of partial summary judgment in favor of the City of Fort Lauderdale on his state law claim for false arrest or imprisonment. He also challenges the sufficiency of the evidence supporting the jury's verdict in favor of Officer Cherilyn Valenzuela on Harrison's excessive force and state law battery claims.

I.

On October 19, 2013, Harrison was staying as a guest at the B Ocean Hotel in Fort Lauderdale, Florida. He was, in his own words, in a "manic state." He was experiencing delusions, confusion, and memory loss, and he had "no sense of reality." While in that condition he told the hotel staff and other guests that he owned the hotel, even though he did not. He started ordering room service, timing how long it took for his food to arrive, and calling the front desk to tell them whether the wait was acceptable. He also removed his clothes and placed them in a pile on the floor of his hotel room, scattered the contents of his wallet around the room, and threw his laptop in the recycling bin. At one point he dropped a glass, which shattered and cut his finger. Instead of trying to stop the bleeding, he simply let his finger bleed on the floor.

2

Harrison called his sister on the phone and told her that he was having a good time with their grandmother in Fort Lauderdale. Their grandmother had been dead for years. Concerned about Harrison's mental health, Harrison's brother-in-law called the Fort Lauderdale Police Department and asked them to conduct a wellness check. Fort Lauderdale police officers Aaron Burk and Daniel Gowans were dispatched to the hotel. When they arrived, the hotel staff told them that Harrison had been claiming he owned the hotel and had been ordering room service and timing how long it took for the food to arrive. As the officers went upstairs to Harrison's room, they believed they were intervening in a possible mental health situation.

When they approached Harrison's room, the officers heard a male voice talking in a "garbled" manner. They also heard a laugh that Gowans later described as "manic" or "a super-villain in a movie kind of laugh." Gowans knocked on the door, announced he was a police officer, and asked Harrison to come to the door and speak with him. Harrison refused to open the door and acted as if the officers worked for the hotel: he told them to bring him a drink and asked them to clean his room. Gowans later testified that Harrison kept cycling from a "manic" laugh, to yelling, to asking for a drink. Harrison later testified that he remembered yelling loudly when the officers knocked. While the officers were standing outside Harrison's door, a guest staying in a neighboring room came out

3

into the hallway.  The guest told the officers he was glad they were there because he had heard screaming and glass breaking all day and did not feel safe in his room.

At that point the officers decided to enter Harrison's room for the safety of Harrison and anyone else inside.  They asked the hotel staff to open the door, but the staff were able to open the door only a few inches at first because Harrison had engaged the safety latch.  Through the gap between the door and the doorframe, the officers could see broken glass and blood on the floor.  They again asked Harrison to unlock the door.  When he refused, the officers asked the hotel staff to open the door the rest of the way.  The staff did so, using a special tool to break the safety latch.

Inside the room the officers saw more blood and broken glass on the floor and saw objects scattered everywhere.  Harrison was on the bed with his hands and his head hidden underneath the pillow.  Fearing that Harrison might have a weapon, Burk and Gowans radioed for a Taser-certified officer to assist them. They waited until that officer, Cherilyn Valenzuela, arrived.  Then they approached Harrison and tried to restrain him.  Harrison resisted, and in the ensuing struggle Valenzuela tased Harrison four times.

Harrison sued Valenzuela, Burk, Gowans, the City, and the Davidson Hotel Company, LLC (which ran the B Ocean Hotel).  He claimed that Valenzuela was

4

liable under 42 U.S.C. § 1983 for using excessive force against him and falsely arresting him in violation of the Fourth Amendment; that Valenzuela committed a battery against him under state law; that the City was vicariously liable for Valenzuela's battery against him; that Burk and Gowans falsely arrested or imprisoned him; that the City was vicariously liable for Burk and Gowans' false arrest or imprisonment of him; and that the City negligently retained and supervised Valenzuela and Gowans. He also asserted state law claims against the Davidson Hotel Company.

The district court dismissed his negligent retention and supervision claims against the City. It also dismissed, at Harrison's request, his claims against Burk and Gowans individually. The court granted summary judgment in favor of the Davidson Hotel Company on all claims against it. The court also granted summary judgment in favor of the City on the claim that the City was vicariously liable for Burk and Gowans' alleged state law violations, finding that exigent circumstances justified Burk and Gowans' warrantless entry into the hotel room and that the officers lawfully detained Harrison under Florida's Baker Act. And the court granted summary judgment in favor of Valenzuela on Harrison's claim that she falsely arrested him in violation of the Fourth Amendment.

But the court found that there was a fact dispute as to whether Valenzuela used excessive force against Harrison in violation of the Fourth Amendment and

5

whether she committed a battery against him. The court also denied the City's motion for summary judgment on Harrison's claim that the City was vicariously liable for Valenzuela's alleged battery. Those three claims proceeded to trial, where a jury returned a verdict of no liability.

## II.

We first address whether the district court erred by granting partial summary judgment in favor of the City on Harrison's vicarious-liability false arrest or imprisonment claim.[1] We review a grant of summary judgment de novo, applying the same legal standards used by the district court. Yarbrough v. Decatur Hous. Auth., 941 F.3d 1022, 1026 (11th Cir. 2019). Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Galvez v. Bruce, 552 F.3d 1238, 1241 (11th Cir. 2008).

---

[1] Harrison does not clearly explain what grant of summary judgment he is challenging. He says that summary judgment was improper "as to Officer Burk and Officer Gowans." But the district court never entered summary judgment in favor of Burk and Gowans. The court instead dismissed Harrison's state law claims against them because he expressly asked it to do so. If Harrison is now trying to appeal the dismissal of those claims, his challenge is barred by the doctrine of invited error. See Doe v. Princess Cruise Lines, Ltd., 657 F.3d 1204, 1213 (11th Cir. 2011). At times Harrison's argument seems to assume that he brought a § 1983 Fourth Amendment claim against Burk and Gowans for their warrantless entry into his hotel room, but he didn't. The appellees proceed as though Harrison were challenging the grant of summary judgment in favor of the City on Harrison's claim that the City was vicariously liable for Burk and Gowans' alleged state law violations. We will too, because that is the best way to make sense of Harrison's arguments.

In the district court Harrison asserted that if Burk and Gowans entered his hotel room without "exigent circumstances" (as defined by Fourth Amendment case law), the City was vicariously liable under Florida law for false arrest or imprisonment based on that entry alone. We assume for the sake of the argument that Harrison's assertion about Florida law is correct because even with the benefit of that assumption, he loses. We agree with the district court that exigent circumstances justified Burk and Gowans' entry into Harrison's hotel room.

Exigent circumstances are an exception to the general requirement that the police must obtain a warrant before entering someone's home.[2] See Roberts v. Spielman, 643 F.3d 899, 905 (11th Cir. 2011); Riggs v. State, 918 So. 2d 274, 278 (Fla. 2005). One such exigent circumstance is when the police reasonably believe that a person inside the home poses an immediate danger to himself. See Roberts, 643 F.3d at 905–06 (upholding warrantless entry into a home to intervene in a possible suicide attempt); Turner v. State, 645 So. 2d 444, 447 (Fla. 1994) (same). The police may reasonably believe that a person is a danger to himself based on "a probability or substantial chance of dangerous behavior," even if the person never engaged in actual dangerous behavior. See Roberts, 643 F.3d at 905–06 (quoting Monday v. Oullette, 118 F.3d 1099, 1102 (6th Cir. 1997)).

---

[2] A hotel room is "equivalent to one's home" for purposes of the warrant requirement. United States v. Forker, 928 F.2d 365, 370 (11th Cir. 1991); accord Turner v. State, 645 So. 2d 444, 447 (Fla. 1994).

7

Exigent circumstances justified Burk and Gowans' entry into Harrison's hotel room because the officers reasonably believed his mental state made him a danger to himself. The undisputed summary judgment evidence established that when Burk and Gowans entered Harrison's hotel room, they knew that Harrison had told a family member he spent the day with their long-dead grandmother; he had told guests and hotel staff that he owned the hotel; he was regularly ordering room service and timing how long it took to arrive; he was speaking in a garbled manner and laughing maniacally as the officers approached his room; he did not seem to understand that Burk and Gowans were police officers instead of hotel employees, even after they told him so multiple times; and a guest in a neighboring room reported hearing screaming and glass breaking in Harrison's room throughout the day. Under those circumstances it was reasonable for Burk and Gowans to conclude that Harrison was a danger to himself and that they needed to enter his hotel room for his own safety.

### III.

We next address Harrison's sufficiency of the evidence challenge. At the close of all evidence at trial Harrison made a Fed. R. Civ. P. 50(a) motion for judgment as a matter of law. The district court denied his motion. Harrison admits that he never renewed his motion for judgment as a matter of law under Rule 50(b). He also did not make a postverdict motion for a new trial under Fed. R. Civ.

P. 59(b).  Because Harrison failed to make a postverdict motion under Rule 50(b)

or Rule 59(b), we lack authority to consider his challenge to the jury's verdict.  <u>See</u>

<u>Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.</u>, 546 U.S. 394, 405 (2006); <u>Hi Ltd.</u>

<u>P'ship v. Winghouse of Fla., Inc.</u>, 451 F.3d 1300, 130 (11th Cir. 2006).

**AFFIRMED.**