[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11647

Non-Argument Calendar

_____

KASI JAMEELAH CRAWFORD,

Plaintiff-Appellant,

*versus*

MARRIOTT INTERNATIONAL, INC.,
d.b.a. Atlanta Evergreen Marriott Conference Resort,

Defendant,

MARRIOTT HOTEL SERVICES, INC.,

Defendant-Appellee.

————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cv-02687-CAP

————————————

Before WILSON, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

Kasi Jameelah Crawford appeals the summary judgment granted to defendants Marriott International, Inc. and Marriott Hotel Services, Inc. (collectively, "Marriott") and the denial of her motion to disqualify or recuse the district court judge. The district court granted Marriott's motion for summary judgment, concluding that there was no legal basis for the duty asserted in Crawford's complaint—the purported duty to warn patrons of the latent dangers of seafood consumption. The court denied Crawford's motion for recusal or disqualification on the ground that it was both

procedurally and substantively deficient.  After careful review, we affirm.[1]

## I

Kasi Crawford suffered an allergic reaction after eating a meal prepared by Marriott at the Revealed Life Church's 2018 Annual Banquet, held at the Atlanta Evergreen Resort & Conference Center.  Marriott representatives communicated extensively with the pastor organizing the event—Pastor Angelique Carter—about the entrée selections for the banquet, including the fact that one option would be a blue-crab-stuffed chicken.  Carter asked the hotel about a chicken option with no seafood in case anyone had an allergy, and the hotel agreed to make one available.  But no one from the Church ever told the hotel to expect someone with food allergies and the Church placed no orders for a seafood-free chicken dish:  The signed banquet event order forms reflected orders for thirty blue-crab-stuffed chicken breasts and twenty honey-glazed salmon entrees, with dietary restrictions marked "N/A."  Doc. 283 at 7.  When a hotel employee asked Carter on the day of

---

[1] We review a "summary judgment *de novo*, applying the same legal standards used by the district court."  *Yarbrough v. Decatur Housing Auth.*, 941 F.3d 1022, 1026 (11th Cir. 2019).  Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  We review a district court's denial of a motion to recuse or a motion to disqualify for abuse of discretion.  *See United States v. Bailey*, 175 F.3d 966, 968 (11th Cir. 1999); *Giles v. Garwood*, 853 F.2d 876, 878 (11th Cir. 1988).

the banquet whether any attendees had "changes to this menu because of restrictions," Carter responded no.  Doc 283 at 8.

Crawford never informed the Church or the hotel about her shellfish allergy.  She alleges that she never saw the menu options that the Church posted; instead, Pastor Carter told her only that the options were "salmon, chicken or veggie."  Doc. 283 at 6. Crawford told Carter that she wanted the chicken.

On the day of the banquet, Crawford sat at a seat marked by a place card stating her name and "chicken."  Pastor Carter had prepared these place cards in accordance with the event order form she received from Marriott, which instructed the Church to provide place cards to identify which entrée each attendee should be served.  Crawford didn't communicate with the server who delivered her blue-crab-stuffed chicken.  She ate a few bites before becoming ill.

Crawford's complaint alleged one count of negligence against Marriott, stating that Marriott "owed a duty to all patrons to provide an adequate warning of the latent dangers arising from the consumption of seafood products."  Complaint at 6.  She also asserted that Marriott knew or should have known the chicken dish contained seafood, which would be life-threatening to people with seafood allergies; that the presence of the crabmeat wasn't obvious to Crawford; and that the "food label" didn't disclose the presence of crab.  *Id.*

About 16 months after filing her complaint, Crawford moved for the district court judge to recuse or disqualify himself pursuant to 28 U.S.C. § 144 and 28 U.S.C. § 455. The primary rationales Crawford offered were that (1) one of the judge's former law clerks was a current employee of the law firm representing Marriott; (2) Crawford is an African American female "who has experienced systemic biases in this judicial system;" and (3) the judge "executed disparate treatment" toward Crawford by sanctioning her counsel and issuing other adverse rulings against her. Doc. 248 at 4–5. The district court denied this motion for what it characterized as three independent reasons: (1) Crawford's counsel, not Crawford, submitted the affidavit supporting recusal, violating a clear requirement of 28 U.S.C. § 144; (2) the affidavit of recusal wasn't timely because it was filed after more than 16 months of litigation; and (3) the affidavit didn't provide a legally sufficient basis for recusal.

On appeal, Crawford challenges both the summary judgment and the denial of her motion for disqualification or recusal.

## II

The district court did not err in granting summary judgment for Marriott because Crawford failed "to make a showing sufficient to establish the existence of an element essential" to her case: She failed to show that Marriott breached any duty that it owed her, so "no genuine issue as to any material fact" remained. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323 (1986).

To state a claim for negligence under Georgia law, a plaintiff must show "the existence of a legal duty; breach of that duty; a causal connection between the defendant's conduct and the plaintiff's injury; and damages." *Handberry v. Manning Forestry Servs., LLC*, 836 S.E.2d 545, 548 (Ga. Ct. App. 2019). "A legal duty sufficient to support liability in negligence is either a duty imposed by a valid statutory enactment of the legislature or a duty imposed by a recognized common law principle declared in the reported decisions of [Georgia's] appellate courts." *Sheaffer v. Marriott Int'l, Inc.*, 826 S.E.2d 185, 188 (Ga. Ct. App. 2019) (quotation marks and citations omitted).

Crawford's original theory of liability in her complaint was based on an alleged duty to warn all patrons of the latent dangers of seafood consumption. But she has failed to identify any Georgia statute or caselaw that might possibly stand for the proposition that a food-serving establishment has such a duty—particularly where, as here, the patrons preselected entrees to be served and told the establishment that no one had any dietary restrictions.

In response to Marriott's motion for summary judgment, Crawford identified alternative legal duties that she alleges Marriott breached—duties, based on two Georgia Department of Public Health Rules, to honestly present food offered for human consumption and to properly label foods. These are the duties that Crawford asserts on appeal. The district court characterized Crawford's citation of the Georgia Rules as an impermissibly late "sec-

ond attempt to amend her complaint and shift her theory of negligence to something on which Marriott did not have the opportunity to conduct discovery, which the court previously rejected." Doc. 283 at 17.  So, the district court dismissed Crawford's case because "the [Georgia] DPH Rules do not provide a basis for the legal duty asserted in Crawford's failure to warn claim." *Id.*

We don't need to decide whether Crawford's invocation of the DPH Rules is really a departure from the theory of liability she alleged in her complaint.[2]  Instead, we may affirm the district court's summary judgment on any ground supported by the record.  *See Haynes v. McCalla Raymer, LLC*, 793 F.3d 1246, 1249 (11th Cir. 2015).  And summary judgment for Marriott should be affirmed even if we consider the Georgia DPH Rules that Crawford cites as a basis for the duty that she alleges Marriott breached.[3]

---

[2] This question is debatable:  Crawford's complaint's first count is simply titled "Negligence," and while it does explicitly refer to a duty to warn about the dangers of seafood consumption, it also states that the "presence of the crabmeat . . . was not obvious to the Plaintiff, and the food label did not disclose that she was being served 'crabmeat stuffed chicken.'"  Complaint at 6.

[3] The district court noted that Crawford provided the court only with a copy of the Georgia Rules that was revised "more than two years after the incident in question" and that she supported her assertion that the rules applied to the Marriott by reference to the deposition of the Evergreen's Director of Operations, who didn't start work until two days after the incident.  Doc. 283 at 16.  So, it was "not clear to the court that these regulations were in place during the Banquet or whether and to what extent they were binding on Marriott." *Id.*  For purposes of argument, we will assume that these regulations were binding on Marriott in substantially the same form at the time of the incident.

Crawford first points to Georgia DPH Rule 511-6-1-.04(7)(b)(1), which states: "Honestly Presented. Food shall be offered for human consumption in a way that does not mislead or misinform the consumer." On appeal, Crawford argues that Marriott violated this provision by "disguising blue crab stuffed chicken as a regular chicken breast entrée." Brief of Appellant at 25.

This argument fails based on the undisputed facts in the record. Marriott's agents communicated to the Church's representative, Pastor Carter, repeatedly and in writing that the entrée being offered was a blue-crab-stuffed chicken breast and asked several times whether any guests had dietary restrictions. Marriott also offered a different seafood-free chicken entrée for anyone with a seafood allergy. Pastor Carter nevertheless executed the banquet event orders on behalf of her church for "thirty blue crab stuffed chicken breasts." Doc. 283 at 7. There is no plausible argument that Marriott "disguis[ed]" its dish or misled or misinformed consumers when it provided the exact entrée that the Church ordered for its members.[4] Therefore, Crawford has failed to establish that Marriott breached any duty that it may have had under this Rule.

---

[4] On appeal, Crawford doesn't argue that the place cards stating "chicken" violated Rule 511-6-1-.04(7)(b)(1). Even if this argument were preserved, it would fail: The Church prepared the cards, not Marriott, and it's doubtful whether a card that just says "chicken" is misleading when (1) the entrée *is* a chicken dish; (2) the card doesn't purport to be anything like an exhaustive list of ingredients; and (3) the fact that this entrée was blue-crab-stuffed chicken was posted at the Church more than three months before the banquet.

Crawford also cites Georgia DPH Rule 511-6-1-.04(7)(c)(4)(i), which states: "Bulk, unpackaged foods such as bakery products and unpackaged foods that are portioned to consumer specification need not be labeled if: A health, nutrient content, or other claim is not made . . . ." Crawford's argument seems to be that because the place card said "chicken," it made a "health, nutrient content, or other claim" and, therefore, that the dish needed to be labeled. So, according to Crawford, Marriott violated the Rule by "negligently failing to verify that the mandatory Place Card with Appellant's entrée selection was properly labeled." Brief of Appellant at 25.

This argument also fails. The Georgia food-labeling rules simply don't apply to Marriott serving dinner at a banquet. First, this section of the Rules is titled "Food Labels" and begins "Food *packaged in a food service establishment*, shall be labeled as specified in law." Ga. DPH Rule 511-6-1-.04(7)(c)(1) (emphasis added). The dinners that Marriott served at the Church's banquet were not packaged food.

Second, the full provision that Crawford cites states that "bulk, unpackaged foods such as bakery products and unpackaged foods that are portioned to consumer specification" don't have to be labeled if a "health, nutrient content, or other claim is not made;" "[t]here are no state or local laws requiring labeling;" and the food "is manufactured or prepared on the premises of the food service establishment . . . ." *Id.* § 511-6-1-.04(7)(c)(4). Even if this provision encompasses dinners prepared and served by a hotel at a

banquet, a place card with just the word "chicken" doesn't make a health, nutrient content, or similar claim; it simply identifies which preselected entrée each guest should receive. And Crawford cites no other law that might require food labeling here.

Third, the Georgia Rules require food labels to contain a lot of information, including the "common name of the food," a "list of ingredients and sub-ingredients in descending order of predominance by weight, including a declaration of artificial color or flavors and chemical preservatives," an "accurate declaration of the net quantity of contents," the "name and place of business of the manufacturer, packer, or distributor," and the "name of the food source for each major food allergen contained in the food." *Id.* § 511-6-1-.04(7)(c)(2). If the labeling rules applied here, Marriott would have been required to produce detailed food labels like those we might find on a box of cereal or can of beans for each dish it served at the banquet and hand them out to each guest alongside her plated entrée. Crawford makes no such contention, but her argument that Marriott negligently violated the labeling rules is baseless unless these rules applied to Marriott's activities in the first place. We will not interpret the Georgia DPH Rules to require restaurants and hotels to provide detailed food labels for every dish they serve. Because the labeling rules don't apply to Marriot's conduct, Crawford can't rely on them to establish the legal-duty element of her negligence claim.

So, even if we consider the Georgia DPH Rules that Crawford raised for the first time in a response to Marriott's motion for

summary judgment, she still has failed to establish any breach of duty given the undisputed facts in the record.  Therefore, there is "no genuine dispute as to any material fact" and Marriott was entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see Celotex Corp.*, 477 U.S. at 322–323.  Accordingly, the district court did not err in granting Marriott summary judgment.

## III

Lastly, the district court did not abuse its discretion when it denied Crawford's motion for disqualification or recusal.  Crawford's motion failed to comply with the procedural requirements of 28 U.S.C. § 144, which states that a "party" to the proceeding may file a "timely" affidavit that the judge had a personal bias or prejudice.  28 U.S.C. § 144.  We have long held that disqualification affidavits must be filed by a party to the litigation, *not* by the party's counsel.  *See Davis v. Bd. of Sch. Comm'rs of Mobile Cnty.*, 517 F.2d 1044, 1050 (5th Cir. 1975) ("'[P]arty' as used in s 144 does not include counsel as such.").  Here, Marsha Mignott, Crawford's *counsel*, signed and filed the affidavit of recusal.  *See* Doc. 248-1.  Further, the district court did not abuse its discretion when it found that the motion was untimely:  It was filed after more than 16 months of litigation, and the primary grounds it raised—the judge's former law clerk's employment with the firm representing Marriott and the plaintiff being an African American female—long predated the filing of the motion.  Therefore, the district court did not err in denying Crawford's motion under § 144.

Crawford's motion also cited 28 U.S.C. § 455(a), which states that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The test is "whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003). On appeal, Crawford renews three arguments for why the district court judge should have been disqualified: (1) Crawford is an "African American female a double minority who has experienced systemic biases in this judicial system"; (2) the district court judge "is in favor of" Marriott's success because of his relationship with a former law clerk who is employed by Marriott's law firm; and (3) the judge erred in issuing orders adverse to Crawford throughout the litigation. Brief of Appellant at 27–29.

The district court did not abuse its discretion in finding all these reasons legally insufficient to require disqualification. First, general allegations that the justice system is systemically biased against African American women do not raise significant doubt about an individual judge's impartiality, particularly where, as here, there are no specific allegations of racial or gender prejudice. Second, the fact that the judge's former law clerk works at the firm representing Marriott does not compel disqualification. A judge's impartiality is cast into significant doubt only where "his former law clerk is actively involved as counsel for a party in a case in which the law clerk participated during his clerkship." *Fredonia*

*Broad. Corp. v. RCA Corp.*, 569 F.2d 251, 256 (5th Cir. 1978). In fact, a law clerk may even practice before the judge for whom he clerked. *Id.* Here, the former clerk has not appeared on behalf of Marriott in any capacity. Third, the district court's rulings against Crawford throughout the litigation do not raise doubt as to the judge's impartiality. "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Nor do judicial remarks during litigation that are "critical or disapproving of, or even hostile to, counsel, the parties, or their cases." *Id.* Here, the rulings about which Crawford complains—for instance, denying her motion for sanctions and denying her motion for leave to amend her complaint—are adverse rulings of the sort that are common in litigation and do not cast doubt on the judge's impartiality.

★ ★ ★

The district court did not err in granting Marriott summary judgment because Crawford failed to "make a showing sufficient to establish" that Marriott breached any duty that it owed her— an "element essential" to her negligence claim. *Celotex Corp.*, 477 U.S. at 322. There remains "no genuine dispute as to any material fact," so Marriott was entitled to summary judgment. Fed. R. Civ. P. 56(a). The court also did not err in denying Crawford's motion for recusal or disqualification because the motion was procedurally deficient under 28 U.S.C. § 144 and, in any event, was legally insufficient to raise significant doubt as to the judge's impartiality under 28 U.S.C. § 455.

14                        Opinion of the Court                21-11647

AFFIRMED.