[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10515

_____

CARACOL TELEVISION S.A.,

Plaintiff-Appellant,

*versus*

TELEMUNDO TELEVISION STUDIOS, LLC,
TELEMUNDO INTERNACIONAL, LLC,
TELEMUNDO NETWORK GROUP, LLC,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:18-cv-23443-DPG

_____

Before WILSON, LUCK, and LAGOA, Circuit Judges.

WILSON, Circuit Judge:

Plaintiff-Appellant Caracol Television, S.A. (Caracol), and Defendant-Appellee Telemundo Television Studios, LLC (Telemundo), entered into a Co-Production Agreement to produce a telenovela called "El Señor de los Cielos" (the Series).  After producing one season of the Series, Telemundo obtained permission to produce a second season (the Sequel) pursuant to a new agreement (the Letter Agreement).  Telemundo went on to produce seasons 3–6 of the Series as well as a spinoff (the Subsequent Seasons).  Caracol subsequently sued Telemundo for copyright infringement and breach of contract.  Caracol alleged that Telemundo wrongfully produced the Subsequent Seasons because Caracol only gave Telemundo exclusive rights in the Series for purposes of making the Sequel, not the additional Subsequent Seasons.  The district court, finding instead that Caracol assigned its copyright interest in the entire Series in perpetuity to Telemundo via the Letter Agreement, granted summary judgment in favor of Telemundo as to all counts.

On de novo review, we likewise conclude that Caracol assigned its interest in the Series to Telemundo when it entered into the Letter Agreement.  Since Caracol no longer has an interest in the Series, the district court properly granted summary judgment in favor of Telemundo.  Therefore, we affirm.

## I.

Caracol operates a network of TV stations in Colombia and produces programming for broadcast on its network and through other distributors and carriers in the United States and throughout the world.  Telemundo produces Spanish-language programming, which is distributed both in the United States and the rest of the world.

On October 25, 2012, Caracol and Telemundo entered into the Co-Production Agreement to jointly develop, produce, and distribute the Series.  The first season of the Series, comprised of 74 episodes, began airing in April 2013.  Prior to the production of the Series, Caracol produced a show titled "El Cartel."  One of the characters in "El Cartel" was El Cabo—a hitman with distinctive characteristics.  Caracol licensed elements of "El Cartel," including the El Cabo character, to Telemundo for use in the Series.

Pursuant to the Co-Production Agreement, Caracol and Telemundo agreed to jointly own "all elements" of the Series.  In the event Caracol or Telemundo wanted to make derivative works based on the Series, the Co-Production Agreement required that the party interested in producing the derivative work first offer the other party the option to become a co-producer.  Should that offer be rejected, the parties were to negotiate in good faith "the terms under which the interested party may be granted the sole right to produce the Derived Series."

In 2013, Telemundo, in accordance with the Co-Production Agreement, offered Caracol the option to co-produce another season of the Series. Caracol declined. The parties negotiated and, on August 27, 2013, entered into the Letter Agreement to produce the Sequel. It is undisputed that, pursuant to the Letter Agreement, Telemundo would produce the Sequel and own all rights to the Sequel in exchange for Caracol having the right to broadcast the Sequel in Colombia. However, the parties disagree on whether Caracol, in executing the Letter Agreement, assigned its entire ownership in the Series to Telemundo.

The Letter Agreement incorporates an annexed Term Sheet that sets forth the parties' agreement regarding the production, distribution, and ownership of the Sequel. Paragraph 3 of the Term Sheet, titled "Sequel," provides that Telemundo would "develop, produce, own, and distribute" the Sequel and has the "right to use all elements (e.g., characters, story, scenarios, locales, etc.) derived from the Series and any new elements added by [Telemundo] for purposes of creating the Sequel." Paragraph 7, titled "Ownership," provides that:

> From inception through all stages of completion, the Sequel and all elements thereof, including the underlying works, format and scripts of the Series, will be exclusively owned by [Telemundo] throughout the world.
>
> [Telemundo] will own and control all exclusive, irrevocable and perpetual right, title and interest (including copyright), throughout the universe in and to the

> Sequel and all derivatives of the Sequel, and all elements, underlying works or portions thereof, including all raw footage, from the inception of production, in any and all media and formats, now known or hereafter devised, in perpetuity, including without limitation all literary, dramatic, or other material contained therein, and the results and proceeds of the services in connection therewith.

Telemundo produced the Sequel and first broadcasted it in 2014. From 2015 to 2018, Telemundo produced, broadcasted, and distributed the Subsequent Seasons. Caracol was not involved in the production of any of the Subsequent Seasons.

On September 5, 2018, Caracol filed its Amended Complaint alleging that it was still a joint owner of the Series and thus entitled to compensation for the distribution and licensing of the Subsequent Seasons. In addition, Caracol contended that Telemundo used the El Cabo character in the Subsequent Seasons without Caracol's permission. The Amended Complaint set forth four claims for relief: Declaratory Judgment as to Copyright (Count I); Breach of Contract (Count II); Accounting (Count III); and Copyright Infringement (Count IV). Subsequently, Carcacol moved for summary judgment on Count I, and Telemundo moved for summary judgment on all of Caracol's claims.

The district court granted Telemundo's motion for summary judgment as to all counts, finding that Caracol transferred all of its rights in the Series and the El Cabo character to Telemundo when the parties entered the Letter Agreement. Applying Florida

law, the court found that the plain language of the Letter Agreement was unambiguous and showed the parties' intent that Telemundo would exclusively own the Series. Although the court could have stopped there, it further found that the parties' course of conduct supported this interpretation. Because Caracol transferred its interest in the Series to Telemundo, its copyright claims (Counts I and IV) failed. In addition, Caracol's claims for breach of contract and accounting (Counts II and III) also failed because there could be no breach of the Co-Production Agreement after Caracol assigned its ownership interest in the Series to Telemundo. Accordingly, the district court entered summary judgment in favor of Telemundo on all counts.

## II.

We review a grant of "summary judgment de novo, applying the same legal standards used by the district court." *Yarbrough v. Decatur Hous. Auth.*, 941 F.3d 1022, 1026 (11th Cir. 2019) (quoting *Galvez v. Bruce*, 552 F.3d 1238, 1241 (11th Cir. 2008)). Summary judgment is proper, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23.

21-10515                Opinion of the Court                7

The interpretation of a contract, including whether it is ambiguous, is a question of law that we review de novo. *Reynolds v. Roberts*, 202 F.3d 1303, 1313 (11th Cir. 2000). The parties agree that Florida law applies to this dispute. Under Florida law, "[c]ontract interpretation begins with a review of the plain language of the agreement because the contract language is the best evidence of the parties' intent at the time of the execution of the contract." *Taylor v. Taylor*, 1 So. 3d 348, 350 (Fla. Dist. Ct. App. 2009) (per curiam). "Before extrinsic matters may be considered by a court in interpreting a contract, the words used on the face of the contract must be ambiguous or unclear." *Acceleration Nat'l Serv. Corp. v. Brickell Fin. Servs. Motor Club, Inc.*, 541 So. 2d 738, 739 (Fla. Dist. Ct. App. 1989) (per curiam). "[I]n determining whether a contract is ambiguous, the words should be given their natural, ordinary meaning," and "where the language is plain a court should not create confusion by adding hidden meanings, terms, conditions, or unexpressed intentions." *Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1549 (11th Cir. 1996) (applying Florida law). And while a contract is ambiguous if it "is susceptible to two different interpretations, each one of which is reasonably inferred from the terms of the contract," a party's interpretation of the contract that is unreasonable in light of the contract's plain language does not make the contract ambiguous. *Frulla v. CRA Holdings, Inc.*, 543 F.3d 1252, 1253 (11th Cir. 2008) (quoting *Com. Cap. Res., LLC v. Giovannetti*, 955 So. 2d 1151, 1153 (Fla. Dist. Ct. App. 2007)).

### III.

Caracol appeals the district court's finding that Caracol assigned its interest in the Series to Telemundo via the Letter Agreement. Caracol argues that the purpose of the Letter Agreement was for Telemundo to produce one additional season of the Series, but it did not give Telemundo ownership rights in the Series in perpetuity. According to Caracol, the Letter Agreement distinguishes between the rights it grants to Telemundo for the Sequel and the rights it grants for the Series. Regarding the Series, the argument goes, the Letter Agreement gave Telemundo the right to "use" the Series for the limited purpose of producing the Sequel. In contrast, it gave Telemundo the right to "own" the Sequel and derivative works of the Sequel in perpetuity. Thus, Caracol contends that the district court erred when it ignored this distinction and interpreted the Letter Agreement to assign Caracol's interest in the Series. However, we reject Caracol's argument and conclude that the Letter Agreement is unambiguous and clearly assigns Caracol's entire copyright interest in the Series to Telemundo in perpetuity.

When resolving questions of contract interpretation, we first look to "the plain language of the agreement." *Taylor*, 1 So. 3d at 350. Here, the Letter Agreement provides in Paragraph 7 that "[Telemundo] will own and control all exclusive, irrevocable and perpetual right, title and interest (including copyright), throughout the universe in and to the Sequel and all derivatives of the Sequel, and all elements, underlying works or portions thereof . . . in perpetuity[.]" Thus, not only did the Letter Agreement grant

Telemundo perpetual rights in the Sequel, but it also granted Telemundo perpetual rights in the "underlying works or portions" of "the Sequel and all derivatives of the Sequel." The Letter Agreement provides in Paragraph 3 that "[t]he Sequel will be based on the original format of the Series" and Telemundo could use "all elements (e.g., characters, story, scenarios, locales, etc.) derived from the Series and any new elements added by [Telemundo] for purposes of creating the Sequel." Since the Sequel was derived from the Series, we logically conclude that the term "underlying works or portions" of the Sequel would include the Series. The Letter Agreement assigns Telemundo rights in the "underlying works or potions" of the Sequel in perpetuity. Thus, the Letter Agreement assigns Telemundo rights in the Series in perpetuity. Accordingly, we conclude that the plain language of the Letter Agreement demonstrates that the parties intended for Caracol to assign its entire ownership interest in the Series to Telemundo.[1]

Since the Letter Agreement assigned Caracol's rights in the Series to Telemundo, Caracol's Count I for declaratory judgment of copyright ownership fails. Count II for breach of contract likewise fails because the Letter Agreement assigned Caracol's rights in the Series to Telemundo. *See One Call Prop. Servs. Inc. v. Sec. First Ins. Co.*, 165 So. 3d 749, 752 (Fla. Dist. Ct. App. 2015) ("Once an assignment has been made, 'the assignor no longer has a right

---

[1] Since we conclude that the Letter Agreement is clear and unambiguous, we need not consider extrinsic evidence of the parties' course of conduct. *See Acceleration Nat'l Serv. Corp.*, 541 So. 2d at 739.

to enforce the interest because the assignee has obtained all rights to the thing assigned.'"). Regarding Count III for right to accounting, we note that this claim is not particularly tied to Caracol's copyright interest in the Series, but instead appears to be a contractual obligation arising out of the Letter Agreement. However, this claim fails because Caracol did not offer any support to raise a genuine issue of material fact in the district court that it was entitled to an accounting. *See Celotex Corp.*, 477 U.S. at 322–23. Lastly, Caracol's Count IV for copyright infringement of the El Cabo character fails because Caracol indicated in its statement of material facts supporting its opposition to Telemundo's motion for summary judgment that the El Cabo character was "licensed by Caracol for use in the Series and in the Sequel." Thus, the El Cabo character would also be included as an "underlying work[] or portion[]" of the Sequel, which means that Caracol assigned its interest in El Cabo to Telemundo via the Letter Agreement.

In sum, we agree with the district court that Caracol assigned its interest in the Series to Telemundo. Accordingly, we affirm the district court's grant of summary judgment in favor of Telemundo as to all counts.

**AFFIRMED.**